[Civ. No. 175. First Appellate District.—April 4, 1906.]

W. R. PEASE, Respondent, v. A. A. FINK, Appellant.

NEW TRIAL—APPEAL FROM ORDER—AMENDMENT OF MINUTE ENTRY—RECITAL OF FACTS—RECORD UPON APPEAL.—A court has authority to correct its records at any time, so that they may speak the truth; and the superior court, pending an appeal by defendant from an order denying his motion for a new trial, the minute entry of which, by clerical misprision of the clerk, recited that the motion came on to be heard, plaintiff's attorney appearing, "the defendant's attorney failing to appear" (and which plaintiff's attorney claimed upon appeal was evidence of an abandonment of the motion), has jurisdiction to correct the minute entry to make it speak the truth and show that another attorney named appeared for the person named as attorney for defendant; and a certified copy of such amended order may, upon suggestion of diminution of the

record, be allowed to be filed, in this court as part of the record upon such appeal.

ID.—"BILL OF EXCEPTIONS"—"STATEMENT OF THE CASE"—REVIEW UPON APPEAL.—The fact that, in his intention to move for a new trial, defendant stated that the motion would be made upon affidavits and a "bill of exceptions," to be thereafter prepared and settled, and the fact that the document settled bears the name of "engrossed statement of the case," and was allowed and settled as such by the judge before whom the case was tried, cannot preclude the use thereof upon appeal from the order granting a new trial, as well as upon an appeal from the judgment taken within sixty days after its rendition, where it contained particular specifications of insufficiency of the evidence, and set forth the exceptions taken at the trial in the same manner as would be appropriate in a bill of exceptions.

ID.—LEGAL EFFECT OF DOCUMENT—DISREGARD OF—ADDITIONAL GROUPING OF ERRORS.—The legal effect of a document is to be determined by the matter which it contains, rather than by the name which it bears. The only distinction between a "bill of exceptions" and a "statement of the case" being that the latter, in addition to setting forth the exceptions taken at the trial, also sets forth the particular errors upon which the moving party relies, the mere fact that, in addition to the exceptions embodied in the instrument, it also grouped them together at the end, and specified them as errors of law committed by the court, does not impair its force as a "bill of exceptions," and may be disregarded.

ACTION FOR BREACH OF CONTRACT—EXCHANGE OF LAND—ENCUMBRANCE—AGENCY OF BROKER—DECLARATIONS OF AGENT—UNSUPPORTED FINDING.—In an action for breach of a contract to pay off an encumbrance secured by deed of trust of plaintiff's land, alleged to have been exchanged for defendant's land, of which exchange defendant knew nothing until after suit was brought, and the basis for which was an agency for defendant by a real estate broker to effect the exchange, declarations of the broker that he was defendant's agent were inadmissible; and, when admitted over defendant's objection, could not be considered, or support a finding that the contract sued upon was made by defendant.

ID.—RISK OF PROOF OF AGENCY.—One who deals with another upon his statement that he is the agent of a third person, takes upon himself the risk of being able to show that such agency existed; and if, instead of satisfying himself thereof by independent investigation, he accepts such statement, and is deceived, he is the victim of his own credulity.

ID.—CERTIFICATE OF TITLE OF DEFENDANT'S LAND FURNISHED BY BROKER.—A certificate of title of defendant's land addressed in

the name of the defendant, and furnished to plaintiff by the broker, in the absence of proof that defendant knew thereof or assented thereto, or was in some way connected therewith, was not admissible as tending to show that he was the agent of the defendant, or that plaintiff was justified in believing that he was such agent.

ID.—PRIOR NEGOTIATION BY BROKER—PURCHASE OF LOTS FROM DEFENDANT—PROCUREMENT OF BLANK DEED—EXCHANGE NOT AUTHORIZED.—Where the broker, prior to the negotiation for exchange, had negotiated with defendant to purchase a block of lots from him within a year at $75 a lot, with privilege of taking one or more lots when he might dispose of them, the procurement and possession of a deed from the defendant, with a blank space left for the name of the grantee after the negotiations of the broker with plaintiff, which was filled with plaintiff's name when delivered, only tended to show an authorized sale of the lands at the agreed price, and the delivery of the deed to an anticipated purchaser from the broker, and did not tend to show, or to authorize plaintiff to believe, that defendant had authorized the broker to purchase property for him or to exchange his property for that of plaintiff, or to enter into any contract binding him to assume the payment of any obligation of the plaintiff.

ID.—BLANK DEED FROM PLAINTIFF—UNRECORDED DEEDS—SUBSEQUENT NEGOTIATION WITH DEFENDANT—RATIFICATION NOT SHOWN.— Where the plaintiff had delivered a deed to the broker of his own property, with the name of the grantee left unfilled, making it subject to an encumbrance to secure his debt, when defendant's deed was delivered to him and both deeds remained unrecorded, a subsequent negotiation, one year thereafter, between plaintiff, the broker, and the defendant, when the latter knew nothing of the existence of plaintiff's blank deed given to the broker, wherein it was agreed that the unrecorded deed to plaintiff from the defendant should be destroyed in order that defendant might sell all of his lands to a third person, and that defendant should repay to plaintiff the original price for the land deeded to him, which was so paid to plaintiff by defendant, such subsequent negotiation and payment does not tend to show a ratification by defendant of the exchange, or of the representations of an agency therefor, by the broker, of which defendant had no knowledge.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

W. F. Williamson, for Appellant.

J. S. Reid, for Respondent.

HARRISON, P. J.—Action to recover damages for breach of contract. In the complaint herein, the plaintiff shows that, in pursuance of an agreement between him and the defendant for an exchange of properties owned by them respectively, they each executed a deed of conveyance to the other; that at the time of such conveyances there was an encumbrance upon his land which had been placed there by himself, amounting to $4,000; that one of the terms of their agreement was that the defendant would assume and pay the said indebtedness and hold the plaintiff harmless therefrom; that the conveyance to the defendant contained a clause by which he assumed such obligation; that the defendant failed and neglected to comply with his said agreement or to discharge said encumbrance; that by reason of such failure the plaintiff was compelled to and did pay the sum of $1,342, and sustained other damages amounting to $570. He therefore asks judgment against the defendant for these amounts of money. The evidence at the trial disclosed the following facts: In December, 1899, the plaintiff was the owner of a parcel of real estate in Oakland, situated at the northwest corner of Fourth and Jackson streets, which was encumbered by a deed of trust executed by him to the Union Savings Bank to secure his promissory note for $4,000, and he was desirous of selling the same or exchanging it for some unencumbered real property. Being occupied with his business, he intrusted the matter to his father, Edwin R. Pease. The latter having been informed that the defendant owned some land in Berkeley, and that Philip Munroe was his agent, visited the office of Munroe in San Francisco, and being told by him that he was the agent of Mr. Fink, the defendant herein, and had the handling of the Berkeley property, went with him to Berkeley and examined the same. Upon reporting to the plaintiff the result of his visit and examination, the latter expressed his willingness to exchange the Oakland property for it, and thereupon his father had a further conference with Munroe, at which they agreed upon an exchange of the Oakland property for ten lots in the Berkeley tract which had been selected by him.

Accordingly, on December 28, 1899, the plaintiff signed and acknowledged a deed of conveyance of the Oakland property, but without having the name of any grantee inserted therein, reciting, however, that "this deed is made subject to a mortgage for $4,000 now on said property, together with the accrued interest thereon." He placed this instrument in the hands of his father, and it was by him delivered to Munroe, who at the same time delivered to the father a deed from the defendant to the plaintiff for the aforesaid ten lots in the Berkeley tract. Neither of these deeds were ever placed upon record. The deed made by the plaintiff was retained by Munroe until it was produced at the trial herein upon the demand of the plaintiff, and the one delivered to the plaintiff was destroyed about a year after its execution, as hereinafter stated. The lots described in the deed from the defendant to the plaintiff are subdivisions of a block of land in Berkeley. and with other subdivisions of the same block, at the time of these negotiations, stood of record in the name of the defendant. Munroe was a dealer in real estate, and some months prior thereto had agreed with the defendant for the purchase of the block from him at any time within a year at the rate of $75 a lot, with the privilege of taking one or more lots at any time whenever he might dispose of them. After the aforesaid exchange of properties had been agreed upon, Munroe requested the defendant to make a deed of the Berkeley lots, leaving the name of the grantee blank, and thereupon the defendant signed and acknowledged a deed therefor without inserting the name of a grantee, and delivered it to Munroe, who delivered it to the plaintiff. The deed itself had been destroyed prior to the trial herein without having been placed of record, and there was a conflict of testimony as to whether it contained the name of any grantee at the time of its delivery to the plaintiff, but, under the findings of the court, it must be assumed that before its delivery to the plaintiff his name had been written therein as grantee. In November, 1900, a third person was negotiating for the purchase of some Berkeley property, including the lots described in the deed delivered to the plaintiff, and certain others of which the title still stood of record in the name of the defendant, and, for the purpose of consummating the negotiation, the plaintiff and the defendant, together with the purchaser, met at

the office of Munroe. It was then agreed between them that, as the deed for the ten lots then held by the plaintiff had never been recorded, the purchaser could receive a satisfactory deed by the destruction of that deed and a conveyance to him from the defendant of the entire tract. Accordingly, the deed to the plaintiff was destroyed, and the defendant made a conveyance to the purchaser of all of the property, and received from him his check for the entire purchase price of the land embraced in the conveyance, and gave to the plaintiff his own check for $600, the price for which the plaintiff had agreed to sell his ten lots. In April, 1901, the Union Savings Bank caused the Oakland property to be sold under the power contained in the aforesaid deed of trust, and the proceeds applied upon the obligation held by it against the plaintiff. There being a deficiency after applying such proceeds, it afterward commenced an action against the plaintiff for the recovery of such deficiency, and the plaintiff was compelled to pay $1,342 in settlement of this action. Upon the trial the court found in accordance with the allegations in the complaint, except as to the consequential damage therein claimed, and rendered judgment in favor of the plaintiff. From this judgment, and from an order denying a new trial, the defendant has appealed.

1. In the transcript which was originally filed herein the order denying a new trial has the following recital: "In this cause defendant's motion for a new trial came on regularly this day to be heard, J. S. Reid, Esq., appearing as attorney for the plaintiff, the defendant's attorney failing to appear. Whereupon it is ordered by the court that said motion for a new trial be, and the same is hereby denied." In the brief of respondent, thereafter filed, one of the points made in his behalf was that, as it thus appeared that the defendant had abandoned his motion in the superior court, he could not now be heard to allege error in denying it. The appellant thereupon procured an amendment of this entry to be made by the superior court, so that it now reads: "In this cause defendant's motion for a new trial came on regularly this day to be heard, J. S. Reid appearing as attorney for plaintiff, and A. E. Cooley, Esq., appearing for W. F. Williamson, Esq., as attorney for defendant. Whereupon it is ordered by the court that said motion for a new trial be and the same is hereby denied." And upon application therefor, and suggestion to

this court of a diminution of the record, he was allowed to file a certified copy of such minute entry as a part of the record herein. The respondent, however, contends that this amended entry cannot be considered, for the reason that by virtue of the previous appeal the superior court had lost jurisdiction to make any amendment of its original entry. The principle upon which it is held that, after an appeal from its judgment, a superior court is divested of authority to make any change in the judgment, is inapplicable here. The amendment was not sought for the purpose of making a change in the judicial action of the court, nor did it have the effect to change in any respect the order from which the appeal was taken. It was made to correct a misprision of the clerk in entering the order, and to make the record correctly state the circumstances under which it was made. The judicial action of the court—the order denying a new trial—is in identical language in both the original and the amended entry thereof. The authority of a court to correct its records at any time so that they may speak the truth is well settled. (*Kaufman* v. *Shain,* 111 Cal. 16, [52 Am. Rep. 139, 43 Pac. 393].)

2. It is further urged by the respondent that the appeal from the order denying a new trial cannot be considered for the reason that in the notice of intention therefor the defendant stated that it would be made upon affidavits and a bill of exceptions thereafter to be prepared and settled; whereas, the document set forth in the transcript is entitled, "Engrossed Statement of the Case," and was settled and allowed as such by the judge before whom the cause was tried.

The procedure for obtaining a new trial, authorized by section 659 (2) of the Code of Civil Procedure, implies that a bill of exceptions may have been settled before notice of the motion shall have been given, and that in such case the bill shall be used on that motion. If, however, no bill has been settled, the same procedure is prescribed for its settlement as for the settlement of a statement of the case. There is no substantial difference between the two documents when settled; the only difference being that in a statement of the case the moving party, in addition to setting forth in the body of the document the exceptions which were taken at the trial, must also specify the particular ones upon which he relies in support of his motion. If the insufficiency of the evidence is the ground of an exception to the decision, or is

stated in the notice of a motion for a new trial, the particulars in which the evidence is claimed to be insufficient must be specified in either document. The legal effect of a document is to be determined upon a consideration of the matter which it contains, rather than by the name which is given to it, and the document is not to be disregarded merely upon the ground that it is erroneously entitled, or is without any title. Although the document set forth in the transcript herein is entitled "Statement of the Case," it may also be treated as a bill of exceptions. All of the matters which would be essential to a bill of exceptions are contained therein, and are stated in the same manner as would be appropriate in such bill. The fact that, in addition thereto, the exceptions taken at the trial are grouped together, and specified as errors of law committed by the court, does not impair its force as a bill of exceptions, and may be disregarded. It must be held, therefore, that the document may be considered as a part of the record upon the appeal from the order denying a new trial. The appellant sufficiently indicated the errors of law upon which he relied by so characterizing the exceptions taken by him at the trial which he enumerated. There is no statutory requirement that either document shall specify the purpose for which it is prepared or settled, and the document when settled is therefore available for any purpose authorized by the code. Section 950 of the Code of Civil Procedure provides that, on an appeal from a final judgment, appellant shall furnish the court with a copy of any bill of exceptions or statement in the case on which he relies, and at the hearing of such appeal, if it is taken within sixty days after the rendition of the judgment, the statement of the case is available for considering the objection that the evidence is insufficient to sustain the decision. (Code Civ. Proc., sec. 939 (1) ; *Wall* v. *Mines,* 128 Cal. 136, [60 Pac. 682].) The judgment herein in favor of the plaintiff was rendered December 7, 1903, and the appeal therefrom was taken January 13, 1904. Whether the document be regarded as a statement of the case or as a bill of exceptions, it forms a part of the record to be considered on the appeal from the judgment, not only for a review of the errors of law therein specified, but also for determining whether the evidence is sufficient to sustain the decision.

3. Counsel for the respective parties have presented in their briefs an able and elaborate discussion of several principles

of law claimed to be pertinent to a decision of the appeal, but
from the conclusion that we have reached upon one of the
alleged errors of the superior court it becomes unnecessary, as
well as inappropriate, to determine the other propositions.
The basis of the plaintiff's cause of action is the agreement
of the defendant to assume the payment of the obligation
secured by the deed of trust, and, accordingly, the court has
found that the defendant made such agreement, and that the
deed from the plaintiff of the Oakland property of December
28, 1899, was made in pursuance of an agreement between the
plaintiff and the defendant. There is, however, no evidence
in the record upon which these findings can be sustained.
It is very clearly shown therein that the defendant was not
present at any interview or negotiation in which the transac-
tion or execution of the deeds was discussed, and that he never
knew or heard of any negotiations for an exchange of the
properties, or the execution of the deed of the Oakland prop-
erty, until after the commencement of this action, and that
neither the plaintiff nor his father ever met the defendant, or
exchanged any verbal or other communication with him until
nearly a year after the date of the said deed. The ground
upon which the respondent relies in support of the findings
is that, in the negotiations between the plaintiff's father and
Munroe for the exchange of the properties, Munroe was the
agent of the defendant for that purpose, and that the defend-
ant is bound by all of the acts and representations of Munroe
as his agent. There is, however, no evidence in the record
tending to establish the fact of such agency, or that Munroe
had any authority from the defendant, except the testimony
of the plaintiff's father that Munroe stated to him that he
was such agent; and the rule is of long standing that the
declarations of a person claiming to be the agent of another
are insufficient to establish such agency or the terms of his
authority. (Civ. Code, sec. 2319 (2); *Sav. etc. Soc.* v.
*Gerichten,* 64 Cal. 520, [2 Pac. 405]; *Smith* v. *Liverpool etc.
Ins. Co.,* 107 Cal. 432, [40 Pac. 540].) On the other hand,
the defendant testified that Munroe was not his agent, and
that he had never employed or authorized him to act as his
agent for the sale of any property; that he never had any
dealings with anyone in connection with the Oakland prop-
erty, or any conversation with anyone about its purchase or
sale, or the payment of any encumbrance thereon, and had

never had in his possession any paper or instrument referring to it, or known anything about the property until the commencement of this suit, and Munroe himself testified that he had never acted as the agent of the defendant, and did not act as his agent in the transaction of December, 1899, and did not at that time state to the plaintiff's father that he was his agent. One who deals with another, upon his mere statement that he is the agent of a third person, takes upon himself the risk of being able to show that such agency existed. (*McDonald* v. *Cool,* 134 Cal. 502, [66 Pac. 727].) If, instead of satisfying himself thereof by independent investigation, he accepts such statement and is deceived, he is the victim of his own credulity. The testimony of these declarations was inadmissible for the purpose of proving such agency and should have been excluded by the court upon the defendant's objection thereto, and when received should not have been considered.

During the trial the plaintiff offered in evidence a certificate of title to the Berkeley lots made by a searcher of records December 23, 1899, in the form of a report addressed to the defendant, which the witness testified had been given to him by Munroe, and at the time of introducing the same his counsel stated that it was for the purpose of showing that the plaintiff was warranted in believing that Munroe was the agent of the defendant. The defendant objected to its introduction, unless the plaintiff should in some way connect the defendant with it. The court overruled the objection, and allowed the certificate in evidence, without any evidence that it had been made at the instance of or with the knowledge of the defendant, or that it had been delivered to or seen by him. The evidence so offered not only had no tendency to show that Munroe was the agent of the defendant, or to justify the plaintiff in believing that he was such agent, and the objections of the defendant were well taken, and the court erred in overruling them. The possession by Munroe of the deed from the defendant to the plaintiff of the Berkeley lots had no tendency to show that Munroe was the agent of the defendant for any other purpose than to deliver the deed, and, if the purchase price was named therein, to receive the same; nor did it have any tendency to show, or authorize the plaintiff to believe, that his previous negotiations with Munroe had been

authorized or approved by the defendant. If no purchase price was named in the deed, the defendant, in the absence of any showing of fraud, might be estopped from disputing the title thereby transferred; but its delivery to the plaintiff would not authorize him to believe that Munroe had authority to deliver it to him as a gratuity, nor did the possession of the deed by Munroe have any tendency to show, or give any ground to the plaintiff for believing, that the defendant had authorized Munroe to purchase any property for him, or to accept any property in exchange for the Berkeley lots or to fix the terms upon which an exchange should be made, or to enter into an executory contract which should be binding upon the defendant for the payment of an obligation of the plaintiff.

The contention of the respondent that the act of the defendant in November, 1900, was a repurchase of the Berkeley lots by him from the plaintiff, and thereby a ratification of the act of Munroe in exchanging the property, is not sustained by any evidence in the record. There is no testimony that it was a purchase, and the plaintiff himself testified that the defendant said nothing to him in regard to purchasing the lots. It, moreover, clearly appears from the evidence that at that time the defendant had no knowledge of any of the acts or representations of Munroe in reference to the Oakland property, and without such knowledge there could be no implied ratification. The evidence of transactions between defendant and Munroe in reference to other property was unavailing for establishing any agency in this transaction, or to authorize the plaintiff to believe that Munroe was acting in this transaction as the agent of the defendant, since both the plaintiff and his father testified that they had neither of them met the defendant until about a year after the transaction, and there is no evidence that they had any knowledge of the other transactions to which they referred in their testimony.

The judgment and order denying a new trial are reversed.

Hall, J., and Cooper, J., concurred.