[Civ. No. 4601.  First Appellate District, Division Two.—May 7, 1924.]

## G. W. CAMPBELL, Respondent, v. R. G. HANFORD et al., Appellants.

[1] ATTORNEY'S FEES—ATTORNEY AND CLIENT—SEVERANCE OF RE-LATIONSHIP—CAUSE OF—EVIDENCE—FINDING.—In this action by an assignee of a law firm to recover from the defendants the reasonable value of legal services alleged to have been rendered by said firm to the defendants at their request, the record does not present a case showing that said law firm was the first to cause the breach of the relationship of attorney and client be-tween it and the defendants, and there is sufficient in the record to base an implied finding of the jury to the effect that said law firm came to the conclusion that its former clients had severed the relationship of attorney and client, and that it acted accord-ingly.

[2] ID.—JUDGMENT—EVIDENCE.—In such action, a member of the law firm in question having testified that a certain individual defend-ant talked with the former frequently ocver the telephone in regard to the legal matters for which compensation is asked; that said individual had talked to another defendant over the telephone in said member's presence, regarding the same matters; that he had frequently gotten advice from said member in regard to the legal questions involved and had stated that he was glad that said member's firm had been employed "by them for their interests," the judgment against said individual defendant must be sustained, even though the defendants contradicted the state-ments of said member of said law firm, thus raising a conflict in the evidence.

[3] CORPORATIONS—SERVICES RESULTING IN BENEFIT TO CORPORATION—PAYMENT—CONTRACTS—RATIFICATION—ESTOPPEL.—It is not the law that a corporation is bound to pay for services which may prove of benefit to it in the absence of a contract to pay for the same or the existence of the elements of ratification or es-toppel.

[4] ATTORNEY'S FEES—CONTRACT FOR SERVICES—AUTHORITY OF COR-PORATE OFFICERS.—Neither the president nor vice-president of a corporation, by virtue of such office alone, has authority to con-

---

1.  See 3 Cal. Jur. 703; 2 R. C. L. 1048.

2.  See 3 Cal. Jur. 608; 2 R. C. L. 953.

3.  See 6 Cal. Jur. 23, 1127; 7 Cal. Jur. 60; 7 R. C. L. 664.

4.  Power of president or vice-president of corporation to employ attorney, notes, 14 L. R. A. 360; L. R. A. 1918F, 33. See, also, 6 Cal. Jur. 1102.

tract for services such as those involved in the instant action on behalf of the corporation.

[5] AGENCY—DECLARATIONS OF AGENT—EVIDENCE.—The authority of an agent cannot be established by his own declarations as to his agency.

[6] ATTORNEY'S FEES—CLOSE CORPORATION—JUDGMENT.—In such action, where the two individual defendants, by whom the law firm in question was emplo.,ed, were the owners of all the stock of the two corporate defendants, with the exception of a very small number of shares, and the services rendered by said law firm were for the benefit of said corporate defendants, a judgment against said corporate defendants was justified.

[7] ID.—PLEADING—OBJECTION—WAIVER—APPEAL—AMENDMENTS. — In such action, defendants cannot avail themselves of the objection made on appeal that the action was technically an action on a "balance of account" for services rendered; that the proof did not show any account; that there had been no payments made and no balance due, where no objection to the variance between the pleading and proof was made at a time when the pleading might have been amended to conform to the proof, and no prejudice has resulted to the defendants by a judgment which accords with the proof, if not technically with the pleadings, the trial court having had the power to permit an amendment to the pleadings to conform to the proof had the matter been called to its attention in time.

[8] ID.—HYPOTHETICAL QUESTIONS—WAIVER OF OBJECTION—APPEAL.— In such action, defendants are precluded from claiming on appeal that error was committed in allowing expert witnesses to answer certain hypothetical questions regarding the value of the services rendered because such questions included as an element a retaining fee and the bill of particulars submitted to defendants contained no such item, where no objection was made in the trial court upon the ground that the bill of particulars did not include a retaining fee.

[9] ID.—JUDGMENT—EVIDENCE.—In such action, in view of the expert testimony as to the value of the services rendered, and the testimony of the members of the law firm that seven attorneys and

5.   See 1 Cal. Jur. 698, 717; 21 R. C. L. 821.

7.   See 2 Cal. Jur. 254, 278; 2 R. C. L. 82.

8.   Competency of abstract question in examination of expert witness, note, 20 Ann. Cas. 207.

See, also, 2 Cal. Jur. 263; 26 R. C. L. 1044, 1046.

9.   What is reasonable attorney's fee in absence of contract, notes, Ann. Cas. 1916B, 263; Ann. Cas. 1918D, 945. See, also, 3 Cal. Jur. 697, 713, 714; 2 R. C. L. 1061, 1048.

their clerical assistants devoted over a month and a half to constant work upon the business of defendants, the appellate court is not prepared to say that a judgment for $25,000 is excessive.

---

(1) 6 C. J., p. 760, sec. 351. (2) 4 C. J., p. 849, sec. 2833; 6 C. J., p. 759, sec. 351. (3) 14a C. J., p. 577, sec. 2516, p. 579, sec. 2522 (1926 Anno). (4) 14a C. J., p. 437, sec. 2290. (5) 2 C. J., p. 935, sec. 692. (6) 14a C. J., p. 361, sec. 2223. (7) 3 C. J., p. 796, sec. 720, p. 798, sec. 720. (8) 3 C. J., p. 801, sec. 720. (9) 6 C. J., p. 748, sec. 331.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. P. Henshall for Appellants.

Samuel M. Shortridge and A. H. Ricketts for Respondent.

LANGDON, P. J.—This is an appeal by the defendants from a judgment for $25,000 against them in an action brought by the plaintiff, as assignee of the law firm of Metson, Drew & Mackenzie, to recover from the defendants the reasonable value of legal services alleged to have been rendered by said firm to the defendants at their request.

According to the testimony which appears in the record in support of the verdict, the defendant Hanford called at the office of the law firm of Metson, Drew & Mackenzie in San Francisco and stated to Mr. Metson that he was representing himself and each and all of the defendants, all of whom were interested, in a greater or less degree, in the legal problems and entanglements upon which he sought advice and legal action. The amount of property involved in the various transactions from which relief was sought was something over twelve millions of dollars and it became necessary for the law firm to examine and study a great number of documents which had resulted in the situation then existing.

Mr. Metson testified that after Mr. Hanford had explained, in outline, the difficulties in which the affairs of the defendants were involved, Mr. Metson told him that the situation required an immense amount of work and

naturally there would have to be a large fee paid. Mr. Hanford said they were able, aside from their securities and interest in the United Properties Company, to pay handsomely and that they could secure a reasonable fee. Mr. Metson then told him that his firm would accept the employment. This conversation continued for several hours. Mr. Hanford telephoned from the law office to the defendant Tevis as to what was being done, and later sent over certain papers concerning the transactions to be investigated by Mr. Metson. Mr. Metson testified, in part, as follows: "Well, it became apparent at the first interview, and I told Mr. Hanford that an examination of these papers would become necessary. From time to time I advised Mr. Hanford with reference to the situation. These papers were furnished by Mr. Hanford and were studied. And in an examination of the Public Utilities Act, for the purpose of blocking before the Railway Commission . . . we proceeded to check up on the facts so far as the documents would check them, and in every way checked up on what Mr. Hanford's facts were. . . . Then we were to advise him accordingly. He wanted action and he wanted to be in a position to be prepared so that if he could not get the option, or the interests which he represented could not get the option, or that Rollins and Halsay had the inside facts and was about to get the option, then we would be prepared to jump in there and prevent it, if possible. So that meant the studying of all of these propositions and the laying out of a line of action. We were to sue on behalf of their interest, if necessary. Finally after examinations, it became apparent to us that it was a big battle. We added to our organization and we farmed out work in the office, some looking up one problem of law and some looking up another problem of law; and we concluded that Mr. Hanford was wrong in his opinion that he could bring suit against Smith, and we so told him. That by reason of the various contracts that had been signed by Hanford and Tevis, and their interests, that a great many legal questions could come in and which would have to be overcome on behalf of the Hanford and Tevis people. There was the question of the ratification in so far as the many signatures were concerned, following a long lapse of time and laches in objecting and forcing Smith when he was in default originally; they had allowed it to drift along.

And the various signatures made it manifest that we should pick out somebody who had not signed any contract and who had not, at least to any material extent, cut out his legal rights. We suggested that to him and he brought a list of the stockholders and we talked over the stockholders' list to find out who we might know and who might possibly be a client of ours, or who we might be able to influence. Finally we picked out Cartwright, he having been in the origin of the transaction and he having done the least to cut away the foundation of his rights; and he was connected as a party to be the plaintiff in the litigation that we anticipated. . . . That was the foundation and we prepared the Cartwright notice and worked out and prepared the Cartwright complaint.. We worked constantly for weeks with the proposition with our entire force and organization.'' Mr. Metson testified further that numerous legal questions became involved as the examination of the documents proceeded and that he had advised Mr. Hanford and Mr. Tevis as well upon all these matters; that all the members of the law firm gave practically their entire time to the matters involved for many weeks; that there were three other lawyers associated with the firm at that time and a fourth was added to the organization to cope with the volume of work and the entire force, including clerks and stenographers, worked upon the business of the defendant; that Mr. Metson gave his entire time for forty-five or fifty days, including most of the Sundays and evenings during that space of time; that during that period other business was given out to outside lawyers because it could not be handled in the office of Metson, Drew & Mackenzie. A lengthy stockholders' complaint was prepared in the so-called Cartwright suit, after the preliminary steps had been taken, and this complaint was submitted to Mr. Hanford. About this time Hr. Hanford wrote a letter to Mr. Mackenzie, which was introduced as an important element in the defense to the action, in which he assumed that all the work which had been done theretofore by the law firm had been done without expectation of compensation and he stated that if the attorneys were willing to make their arrangements contingent upon securing a large loan in the east for the defendant Union Land Company, he was ready ''to tie up today,'' otherwise, he hoped that if the negotia-

tions came to nothing, he would be pardoned for having taken up so much of the time of the members of the law firm. The members of the firm testified that they did not understand this communication; that they considered it a self-serving declaration and an attempt to get out of an obligation, and Mr. Mackenzie accordingly called up Hanford and asked him if the letter was to be construed as severing their relations of attorney and client, or if his firm was to continue to represent the defendants. Thereupon Hanford stated that the letter was not so intended; that the attorneys were to continue in their employment and he would see them about the Cartwright suit in a few days. The attorneys continued doing the work contemplated until, without further notice to them, a complaint substantially similar to the one they had prepared in the so-called Cartwright suit was filed by another attorney. No explanation was made to them by any of the defendants and they, thereupon, considered that the relationship of attorney and client had been severed by the defendants and assigned their claim for services to the plaintiff, who began this action.

The testimony of Mr. Metson above set forth was substantially corroborated by Messrs. Drew and Mackenzie of the same firm. The reasonable value of the services rendered was established by expert testimony.

The appellants contend that the action of the law firm in assigning their claim for services and directing that an action be brought thereon, without notice or demand for payment of the same, was a breach of the relationship of attorney and client; that there is no substantial evidence to sustain the judgment against the defendants Tevis, Hanford Investment Company and Union Land Company; that the action is brought upon a balance of account and the evidence does not show any balance of account due; that error was committed in allowing the expert witnesses to answer certain hypothetical questions regarding the value of the services rendered because such questions included as an element a retaining fee and the bill of particulars submitted to defendants contained no such items; that the verdict and judgment are grossly excessive.

It is perhaps true that when the law firm construed the filing of the complaint in the Cartwright suit by another attorney, as a breach of faith upon the part of their clients,

severing the relationship of attorney and client between themselves and the clients and immediately brought suit for the value of their services, they took the chance of being mistaken in their judgment. It is conceivable that the clients might have shown that they had been guilty of no breach of the relationship and that the attorneys were the first to cause the breach. [1] The present record does not, however, present such a case. The law firm came to the conclusion that its former clients had severed the relationship of attorney and client; they acted accordingly and there is sufficient in the record to base an implied finding of the jury to that effect. Mr. Cartwright, in whose name the action was to be brought, testified: "Why subsequent to the preparation and signing of the Metson, Drew & Mackenzie complaint, which as I understand was not entered or was not filed, it was determined to bring suit through Randolph Whiting, and Mr. Hanford or Tevis and Mr. Albert Hanford and Mr. Tevis and myself spoke on that subject and Mr. Tevis, I think it was, requested me to see Mr. Whiting to verify the complaint." While Mr. Cartwright says he thinks it was Mr. Tevis who requested him to verify the complaint at the office of Mr. Whiting, nevertheless, the testimony above quoted makes it clear that the defendant Hanford was also a party to the discussion and to the determination to make a change in attorneys. Furthermore, as we shall discuss hereinafter, the record is such as to warrant the implied finding of the jury that Tevis also bore the relationship of client to the law firm. We think, therefore, that the first point urged by the appellants is without merit.

[2] As to the alleged insufficiency of the evidence to sustain a judgment against the defendant Tevis, we think the contention of the appellant is also without merit. That judgment rests upon the testimony of Mr. Metson, who stated that Mr. Tevis had talked with him frequently over the telephone in regard to the legal matters involved; that he had talked to Mr. Hanford over the telephone in Mr. Metson's presence, regarding the same matters; that Mr. Tevis had frequently gotten advice from Mr. Metson in regard to the legal questions involved and had stated that he was glad that Mr. Metson's firm had been employed "by them for their interests." It is true, the defendants con-

67 Cal. App.—11

tradicted these statements, but that merely raised a conflict in the evidence, and in view of the implied finding of the jury in its judgment against Tevis, we must give full weight to Mr. Metson's statements appearing in the record.

It is urged by the corporate appellants that the judgment against them is erroneous because it must rest either upon the testimony of the attorneys that the services rendered were of a nature to be beneficial to the corporations, or upon the admissions in the record that Hanford and Tevis were president and vice-president of these corporations, or upon the testimony of Mr. Metson representing himself as having authority to act for the defendant corporation. [3] We concede to said appellants that it is not the law that a corporation is bound to pay for services which may prove of benefit to it in the absence of a contract to pay for the same or the existence of the elements of ratification or estoppel. [4] It is also settled that neither the president nor vice-president of a corporation, by virtue of such office alone, has authority to contract for services such as those involved here on behalf of the corporation. (*Pacific Bank* v. *Stone*, 121 Cal. 202, 206 [53 Pac. 634].) [5] And it is equally well settled that the authority of an agent cannot be established by his own declarations as to his agency. (Civ. Code, sec. 2319, subd. 2; *Ferris* v. *Baker*, 127 Cal. 520 [59 Pac. 937]; *Petterson* v. *Stockton etc. Co.*, 134 Cal. 244 [66 Pac. 304]; *Smith* v. *Liverpool etc. Co.*, 107 Cal. 432, 437 [40 Pac. 540]; *Pease* v. *Fink*, 3 Cal. App. 371, 379 [85 Pac. 657].)

[6] However, there is another legal doctrine which we find applicable to the record before us and which justifies the judgment against the corporate defendants. It is admitted in the record that the defendants Tevis and Hanford owned all of the stock of the R. G. Hanford Company. It is also admitted that this company held 19,997 shares of the capital stock of the defendant Hanford Investment Company out of a total of 20,000 shares. The remaining three shares were owned by Albert Hanford and the defendants R. G. Hanford and William S. Tevis. It will be seen, then, that there was but one share of stock of this company which was not owned by the defendants Hanford and Tevis. As to the defendant Union Land Company, the 1,000,000 shares of the capital stock of that company were owned as follows:

Albert Hanford, 10 shares; B. M. Aiken, 10 shares; C. E. Gilman, 10 shares; R. G. Hanford, 499,985 shares, and William S. Tevis, 499,985 shares. This being the admitted situation, we think the doctrine of the case of *Commercial Security Company* v. *Modesto Drug Co.*, 43 Cal. App. 162 [184 Pac. 964] is applicable. It was said in that case: "The evidence shows—indeed it is admitted—that, at the time the transaction constituting the basis of this litigation took place, Skow and Morris were, practically, the defendant—that is, the corporation itself. They owned all the stock but one single share, which, as is often so with so-called 'close corporations,' was put in the name of attorney Walthall undoubtedly for the sole working purposes of the corporation. . . . As a matter of fact, and to all practical intents and purposes, Skow and Morris were partners in the business of the defendant, although in legal contemplation they were, under the name of the defendant, a corporation. . . . The question may be asked: May a corporation, whose capital stock is entirely owned, practically by two persons, one of whom, being in the active management of the business of such corporation and the other of whom has virtually endorsed or by conduct ratified it, refuse performance of its obligations under the agreement? Having received the benefits, or some of them, of an agreement obviously made for it and for its benefit (and ostensibly by it), with the consent and concurrence of the owners of substantially all its capital stock, will a corporation be permitted to dodge or escape liability for obligations arising upon such agreement by the plea that the contract was made without observance of the formal requisites or prerequisites prescribed by its charter or by-laws with respect to the making of contracts? The answer to these questions may be found in the principles of equity and justice applicable to such a case as we have here. Indeed, it would be deemed a hard rule or one of more than mere unsubstantial technical texture if the courts could not consistently break through it and so hold that a corporation is bound by a contract made under such circumstances as characterized the making of the contract in the present case."

The cases of *Sargent* v. *Palace Cafe Co.*, 175 Cal. 737 [167 Pac. 147], *Minifie* v. *Rowley*, 187 Cal. 481 [202 Pac.

673], and *Clement* v. *Duncan,* 191 Cal. 209 [215 Pac. 1025], also take notice of the foregoing rule of law.

[7] Appellants contend that the action was technically an action on a "balance of account" for services rendered; that the proof did not show any account; that there had been no payments made and no balance due. This objection, we think, is of no avail upon appeal under our system of pleading. No objection to the variance between the pleading and proof was made at a time when the pleading might have been amended to conform to the proof, and no prejudice has resulted to the defendants by a judgment which accords with the proof, if not technically with the pleadings. Plaintiff was given the relief to which the evidence indicated he was entitled and the trial court had power to permit an amendment to the pleadings to conform to the proof had the matter been called to its attention in time.

The last objection is that no evidence should have been received to establish the value of the legal services rendered which included as an element of that value a retaining fee. Appellants admit that since the decision in the case of *Knight* v. *Russ,* 77 Cal. 410 [19 Pac. 698], it is settled law in this state that evidence as to the value of a retainer is admissible without any special allegation regarding the same, but they contend that when a bill of particulars, furnished at the request of the defendant, does not include such an item, evidence of its value may not be received at the trial. That situation was presented in the instant case, and the case of *Knight* v. *Russ, supra,* is relied upon to establish the appellants' contention. [8] That case does not pass upon the question raised by the appellants here, and it is unnecessary for us to pass upon that question in the instant case because it was not raised in the trial court by a proper objection to the evidence of which complaint is made. The hypothetical question of which complaint is made covers twenty pages in the record. The defendants objected thereto upon numerous grounds, the objections and arguments thereon covering several pages more. As objections were urged upon various grounds, the attorney for the plaintiff stated that he would correct his facts embodied in the hypothetical question if the objections indicated that anything stated therein had not been shown by the evidence. Despite the multitude of objections which able coun-

sel found to urge against the question, no objection was made upon the ground that the bill of particulars did not include a retaining fee. We think, therefore, appellants are· precluded from urging that objection upon appeal. Had that specific objection been urged at the proper time, the hypothetical question might have been corrected, or the trial court might have ordered the plaintiff to furnish ˚to the defendants a further account under the power given by section 454 of the Code of Civil Procedure.

[9] In view of the expert testimony appearing in the record as to the value of the services rendered, and the testimony of the members of the law firm that seven attorneys and their clerical assistants devoted over a month and a half to constant work upon the business of defendants, we are not prepared to say that the judgment is excessive. ·

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition· by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1924.

All the Justices concurred.