CARLO SCHIRONE, the Receiver in the Failure of the BANCA POPO-
LARE MONOPOLI, OF MONOPOLI, ITALY, and Another, Appellants,
*v.* HOCHHEISER & WEISBERG, INC., Respondent. (Action No. 1.)

CARLO SCHIRONE, the Receiver in the Failure of the BANCA POPO-
LARE MONOPOLI, OF MONOPOLI, ITALY, and Another, Appellants,
*v.* HOCHHEISER & WEISBERG, INC., Respondent. (Action No. 2.)

First Department, March 10, 1933.

*Nathaniel S. Corwin* of counsel [*Nathaniel S. Corwin* and *Samuel
F. Frank*, attorneys], for the appellants.

*Stanley Garten*, for the respondent.

O'MALLEY, J. Here is involved the question of the liability of the
defendant on three drafts, alleged to have been accepted on its
behalf by its secretary.

An Italian partnership of Monopoli, Italy, hereinafter designated
Mastronardi & Sons, drew three separate drafts upon the defendant
which was a jobber of groceries. Two were dated December 18,
1926, and the third February 1, 1927. They were in the respective
amounts of $3,971.28, $7,278.18 and $9,931.22. Accompanying
these drafts were four bills of lading to order, duly indorsed by

Mastronardi & Sons, covering the respective shipments of sulphured cherries in brine. The bills of lading were accompanied by invoices of Mastronardi & Sons, and attached to each invoice was the regular consular certificate.

Before acceptance the drafts were discounted by Mastronardi & Sons with the Bancà Popolare Monopoli, Italy, then being operated by the plaintiff Schirone, as receiver. Thereafter the Banca Popolare Monopoli forwarded the drafts, together with the shipping documents, indorsed to order of Banca Commerciale Italiana, of New York city, which presented them to defendant. They were accepted on behalf of the defendant by its secretary, Tillie Weisberg. Upon such acceptance the shipping documents were delivered to the defendant. Tillie Weisberg indorsed the bills of lading in the name of the defendant and issued delivery orders in the name of the defendant. These she gave to a concern known as Mastronardi & Company, Inc., a domestic corporation sharing offices with the defendant in New York city.

The complaint was dismissed on the ground that Tillie Weisberg had no authority to accept accommodation paper on behalf of the defendant; that there had been no prior dealings between the defendant and the Italian bank, wherein drafts had been accepted on defendant's behalf by Tillie Weisberg; and that, as the drafts had been discounted before acceptance, defendant was not estopped from denying the authority of Tillie Weisberg or from asserting that the act was *ultra vires*. We disagree with the conclusion reached by Special Term and are of the opinion that judgment should have been directed in favor of the plaintiffs.

So far as the authority of Tillie Weisberg, as secretary, to bind the defendant upon the transactions in question is concerned, we think the evidence is convincing that such existed. The defendant was a closed family corporation, its stock being held by Tillie Weisberg; her husband, Louis Weisberg, its president; her brother-law, Jacob Erlich, its vice-president; her brother-in-law, Samuel Hochheiser, its treasurer; and her sister, Beatrice Hochheiser.

For some eight years prior to the transaction here in question, Tillie Weisberg had done all of the buying for the defendant. She took care of all of its financial matters, signed checks and acceptances. The other officers handled the selling part of the business save in a few instances.

It was stipulated upon the trial that on a great majority of drafts, other than those here in question, presented to the defendant for acceptance by the Banca Commerciale Italiana, the acceptances were made in the name of the defendant by Tillie Weisberg. It further appeared that for a year prior to the acceptance of the

drafts here involved the defendant had purchased goods from Mastronardi & Sons, all transactions being handled by drafts accepted by Tillie Weisberg in the name of the defendant, to the knowledge of its other officers.

The knowledge of the Banca Commerciale Italiana in prior transactions should inure to the benefit of its principal in the transaction here sued upon with respect to the authority of defendant's secretary. It seems to us, therefore, that the authority of Tillie Weisberg to accept drafts on behalf of the defendant was thoroughly established.

If material to the decision herein, the acceptance by her on behalf of the defendant in the case before us may not be regarded as an accommodation acceptance. This defendant received the documents giving title to and the right to possession of the sulphured cherries. The transactions, therefore, amounted to a purchase. By surrender of the documents the discounting bank materially changed its position.

However, in the case of drafts no new consideration is necessary to be furnished to the holder who presents the same for acceptance. Upon acceptance the drafts are in effect made promissory notes, the acceptor standing in the place of the maker, being primarily liable, while the maker stands in the place of the first indorser. (*Heuertematte* v. *Morris*, 101 N. Y. 63; *Anglo & London-Paris National Bank* v. *Jacobson Co., Inc.*, 196 App. Div. 51; *United States Rail Co.* v. *Wiener*, 169 id. 561, 562; 1 Daniel Neg. Inst. [6th ed.] § 479.)

Whatever wrong, if any, to the defendant was effected by Tillie Weisberg in diverting from defendant's use and benefit the cherries covered by the shipping documents,— a transaction in which the plaintiffs were in no way concerned.

It follows, therefore, that the judgments appealed from should be reversed, with costs, and that judgment be directed in favor of the plaintiffs and against the defendant in action No. 1 for $12,695.02, with interest from March 30, 1932, and in action No. 2 for $11,157.72, with interest from March 30, 1932, with costs.

FINCH, P. J., MARTIN, SHERMAN and TOWNLEY, JJ., concur.

In action No. 1: Judgment reversed, with costs, and judgment directed in favor of the plaintiffs and against the defendant for $12,695.02, with interest from March 30, 1932, with costs.

In action No. 2: Judgment reversed, with costs, and judgment directed in favor of the plaintiffs and against the defendant for $11,157.72, with interest from March 30, 1932, with costs.