JOHN SADA, Respondent, v. THE GALLIB CORPORATION, Appellant.

First Department, December 22, 1944.

*George H. Klein* of counsel (*Donald Marks* with him on the brief; *Baer & Marks,* attorneys), for appellant.

*Alvin C. Cass* for respondent.

UNTERMYER, J. The complaint alleges that the defendant, The Gallie Corporation, on June 16, 1942, drew its sight draft on one Bassil in Bogota, Colombia, South America, for $5,234.95, payable against bill of lading and consular invoice for merchandise theretofore ordered by Bassil. The draft was payable through the National City Bank at Bogota. The merchandise, however, was landed at Buenaventura, 1,200 miles distant, and for that reason could not be inspected by Bassil before payment of the draft. Bassil paid the draft, obtained the shipping documents and then discovered that the goods were not as ordered but were of considerably lower value. The plaintiff, assignee of Bassil's claim, maintains this action for the difference between the value of the merchandise and the amount paid, together with expenses incurred in the importation of the merchandise.

It is significant that the complaint fails to allege either that the defendant was the seller of the merchandise or that, as the drawer of the draft, it was aware that the merchandise was not in accordance with the contract of sale. The plaintiff maintains that since the defendant drew its own draft instead of presenting the draft of another party which it had either discounted or received for collection, the presentation and collection of the draft, coupled with the delivery of the documents, was tantamount to a sale of the merchandise by the defendant to plaintiff's assignor.

The only decision referred to by either party, which both parties assert to be controlling, is *Schirone* v. *Hochheiser & Weisberg, Inc.* (237 App. Div. 723, affd. 263 N. Y. 624). In that case this court held that the defendant, which was the acceptor of certain drafts upon presentation of the bills of lading, invoices and consular certificates, was not in the position of an accommodation acceptor and that " by surrender of the documents the discounting bank materially changed its position." The case did not present any question of the liability of an innocent drawer who had no connection with the underlying transaction since the drafts there were drawn by the seller of the merchan-

dise and indorsed by the bank. In that connection it was held that the discounting bank had furnished consideration for the acceptance of the drafts by the defendant by delivery of the instruments of title and that the transaction to that extent "amounted to a purchase" by the defendant. Nothing decided in that case affects the question presented here.

We think, therefore, that we are not required by controlling authority to impose so extensive a liability on the drawer of a draft who, so frequently by these means, collects the funds for the seller of the merchandise. We think, also, that the drawee who pays or accepts the draft and who must know the identity of the party from whom the merchandise was purchased should not be permitted to assert against an innocent drawer the liabilities that devolve upon a seller of goods under the Personal Property Law.

There is, we think, recognition of this principle in the Negotiable Instruments Law. Between all the parties to a bill or note the underlying assumption is the existence of good faith and that no party will transfer negotiable paper with knowledge of any defect which affects the validity of the instrument. The Act itself in section 115 provides that even where the negotiation is merely by delivery or by qualified indorsement the party who negotiates the instrument warrants (subd. 4) that "he has no knowledge of any fact which would impair the validity of the instrument or render it valueless". The complaint in the present case omits any such allegation.

It is true that in commercial practice the seller of the goods is usually the drawer of the draft. But we find nothing in the Negotiable Instruments Law which imposes on an innocent drawer, be it bank or individual, who has agreed to finance a transaction, all the duties that devolve upon a seller of goods under the Personal Property Law. Such a transaction is equally consistent with the assumption that the drawer of the instrument holds the goods as security so long as they remain in his possession. It does not necessarily imply, as the plaintiff would seem to assert, that every drawer of a draft is also the principal in the transaction. If such had been the intention of the Negotiable Instruments Law it would have provided for substantial warranties of the underlying transaction rather than the limited warranties contained in section 111.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted, with leave to the plaintiff to serve an amended complaint within twenty days after service of order on payment of said costs.

Townley, Glennon and Dore, JJ., concur; Martin, P. J., dissents and votes to affirm.

Order reversed, with twenty dollars costs and disbursements, and the motion granted, with leave to the plaintiff to serve an amended complaint within twenty days after service of order on payment of said costs.   [See 268 App. Div. 1039.]