BARKIN CONSTRUCTION COMPANY, Respondent, *v.* EDMUND L. GOODMAN et al., Copartners under the Firm Name of BRAISTED, GOODMAN & HERSHFIELD, Appellants.

Pledge — corporation — when pledge of rental of apartment house, owned by corporation, as security for loan, the proceeds of which were used for the benefit of the corporation, valid.

In an action brought by a corporation, owning an apartment house, against its renting agents for a balance of rent in their hands, the defendants proved an agreement by which the rent was to be held as security for a loan made by them, the proceeds of which loan were applied to the payment of interest on a mortgage upon the property of the company. The transactions regarding the loan were conducted by a former president of the company, whose wife was the owner of the majority of the stock and was then president of the corporation, in the presence of and with the tacit approval of the secretary, who was intrusted with the general management of the business of the company. *Held*, error for the court to hold the agreement of no effect and direct a verdict for the plaintiff. The evidence justified a finding that the loan, though made in form to the former president in person, was for the benefit of the company and the situation was one where property of the company could lawfully be pledged as security, and enough was proved to permit a jury to say that the pledge was within the scope of the secretary's powers.

*Barkin Const. Co.* v. *Goodman*, 167 App. Div. 899, reversed.

(Argued May 22, 1917; decided June 12, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 11, 1915, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry Siegrist, Edward Lauterbach* and *Melville H. Cane* for appellants. The fact that plaintiff received the fruits of the transaction and used the $5,000 for its own benefit supported the inference that the persons then purporting to represent the plaintiff were authorized to bind it by the arrangement made. In any event an inference that plaintiff ratified and adopted the arrangement with full knowledge of the details thereof through Berman, its secretary, was clearly permissible. The general rules of law relating to contracts and property rights apply to corporations as well as to individuals, and the principles of the law of agency apply to both alike. (*Martin* v. *N. F. P. Mfg. Co.*, 122 N. Y. 165; *Young* v. *U. S. Mort. & Trust Co.*, 214 N. Y. 279; *Dickinson* v. *Salmon*, 36 Misc. Rep. 169; *Dunn* v. *Hornbeck*, 72 N. Y. 80.) A corporation is bound as to third persons by acts within the apparent scope of the agent's authority and is estopped from denying the agent's authority by permitting him to assume authority to represent it. (*People* v. *Rochester Ry. & L. Co.*, 195 N. Y. 102; Mechem on Agency, §§ 84, 279, 280, 282, 283; *Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5; *Diamond Soda Water Co.* v. *Hegeman & Co.*, 74 App. Div. 430; *Wilson* v. *Kings Co. El. R. R. Co.*, 114 N. Y. 487; *Hanover Bank* v. *American Dock & Trust Co.*, 148 N. Y. 612; *Goldstein* v. *Godfrey Co.*, 70 Misc. Rep. 235, 236; *Howell* v. *Edwards Co.*, 36 N. Y. S. R. 803; 129 N. Y. 625.) Irrespective of any authority of Barkin there was a contract with plaintiff implied in fact, arising from the acquiescence of Berman, the secretary, who concededly was vested with extensive powers, the

business arrangements of the corporation being left to him by the president. (*Miller* v. *Schloss*, 218 N. Y. 400; *Cohen* v. *Siegel-Cooper Co.*, 172 App. Div. 21; *Ellis* v. *Howe Machine Co.*, 9 Daly, 78; *Hoyt* v. *Thompson*, 19 N. Y. 207, 218; *O'Grady* v. *Howe & Rogers Co.*, 166 App. Div. 552; 2 Morawetz on Private Corp. [2d ed.] 618; *Sheldon H. B. Co.* v. *E. H. B. M. Co.*, 99 N. Y. 607; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.)

*J. A. Seidman* for respondent. There was not a scintilla of proof to show that plaintiff held out Barkin as its agent so as to estop it from denying his alleged agency. (*Maguire* v. *Seldon*, 103 N. Y. 642; *Jacobus* v. *Jamestown Mantel Co.*, 211 N. Y. 154; *Edwards* v. *Dooley*, 120 N. Y. 540; *Walsh* v. *Hartford Ins. Co.*, 73 N. Y. 10; *Bickford* v. *Menier*, 107 N. Y. 490; *Dunn* v. *Hornbeck*, 72 N. Y. 88; *Dickinson* v. *Salmon*, 36 Misc. Rep. 169.) The evidence introduced or offered by appellants was insufficient to require the court to submit for the consideration of the jury the question as to whether the plaintiff by any act ratified Barkin's acts. (*Hamlin* v. *Sears*, 82 N. Y. 327; *Condit* v. *Baldwin*, 21 N. Y. 219; *Ramsay* v. *Miller*, 202 N. Y. 75; *Thompson* v. *Craig*, 16 Abb. Pr. [N. S.] 29; *Woodruff* v. *Rochester R. R. Co.*, 108 N. Y. 39; *Berry* v. *Broadway Co.*, 148 App. Div. 159.) There was no evidence of any kind to justify an inference that Barkin's acts were ratified by silence or acquiescence. (*Hopkins* v. *Clark*, 7 App. Div. 207; 158 N. Y. 299; *Merritt* v. *Bissel*, 155 N. Y. 396; *Thomas* v. *Gage*, 141 N. Y. 506; *Viele* v. *McLean*, 200 N. Y. 260; *Lockwood* v. *Thorne*, 18 N. Y. 285.)

CARDOZO, J. The plaintiff appointed the defendants its renting agents for an apartment house known as the Chesterfield in the city of New York. At the close of the agency, a balance of rent was in the defendants' hands. For this the plaintiff sues. The defendants have proved an agreement by which the rent was to be held as

security for a loan.    The question is whether the plaintiff's agents were authorized to make the pledge.

In January, 1912, the Barkin Construction Company was the owner of the Chesterfield apartments.    It was unable to pay the interest then due upon the mortgage. The interest amounted to $11,250.    There was need of $5,000 to make the payment.    One Samuel Barkin told the defendants that they would be made the agents of the building if they would loan $5,000 to the company. Their appointment as agents was put in written form.    It was signed in behalf of the company by Berman, the secretary.    At the same time the defendants tendered Barkin a check for $5,000 to the order of the Barkin Construction Company.    Barkin asked them to substitute a check to his own order.    He told them he was in fact the company.    He also told them that the rents which they collected would be collateral security for the loan, and that if the note was not paid, they could reimburse themselves from their collections.    All this was in the presence of Berman, the secretary.    Berman made no protest. On the contrary, he signed the contract by which the defendants became agents.    Thus re-assured the defendants substituted a check to Barkin's order and were given Barkin's note.

At the moment of this transaction Barkin was not in fact an officer of the plaintiff.    He had been its president for many years, and as such had done business with the defendants.    In 1910 he resigned in favor of his wife. But the loss of office did not dim his interest in the enterprise.    He still assumed, whether with or without authority, to speak in its behalf.    He put the defendants' money in his own bank account, but he did not keep it for himself.    He drew his check for $11,250 to the order of the company, and the company used the money to pay the interest on the mortgage.    The state of the account would have made the payment impossible without the aid of the defendants' loan.

In these transactions we hear nothing from Barkin's wife. The preservation of the plaintiff's property was at stake, but the crisis found her silent. She held six shares of the total issue of ten. Her brother-in-law and Berman held the rest. In name at least she was the president; but the management was in other hands. She was asked on the trial to whom she left her business arrangements. Her answer was that she left them to the secretary. The answer is verified by the course of dealing. It was the secretary, acting with Barkin, who employed the defendants. It was the secretary, acting with Barkin, who borrowed the money for the interest. Everything that followed confirms the inference of his authority. Barkin's note, as it fell due, was renewed from time to time. The secretary arranged for the renewal. On one occasion the defendants refused to turn over the rent unless the note was reduced. They reminded the secretary, Berman, that this was the agreement. He gave no sign of dissent, but undertook to procure from Barkin a payment of $1,000, which was made the next day. The rents were deposited sometimes in the plaintiff's bank account and sometimes in Barkin's. The secretary determined where the deposit should be made. The defendants' statements of account, submitted from time to time, showed charges for interest on the loan. These statements reached the hands of Mrs. Barkin, who says she examined them. They were examined also by the secretary. The evidence justifies the inference that the accounts were retained without objection. During the entire course of the agency the defendants never had any dealings with any one except Barkin and Berman. Mrs. Barkin they never saw. At the close of the agency their note had been reduced to $3,500. Barkin was then insolvent. He does not dispute the agreement that the rents as collected were to be security for the loan. Berman does not dispute it. The corporation for which they assumed to speak repudiates their

BARKIN CONSTRUCTION CO. *v.* GOODMAN. **161**

1917.]    Opinion, per CARDOZO, J.    [221 N. Y.]

authority. It had the benefit of the loan. It rejects the promise of security. In this position it has thus far been sustained. The trial judge held the agreement of no effect, and directed a verdict for the plaintiff. We think the judgment cannot stand.

The evidence justifies a finding that the loan, though made in form to Barkin, was for the benefit of the company. The situation was, therefore, one where property of the company could lawfully be pledged as security. Barkin and Berman, acting in concert, undertook to make the pledge. Enough was proved to permit a jury to say that the pledge was within the scope of Berman's powers. He was the company's secretary, but he was much more than its recording officer. The evidence makes it plain that he had been intrusted with the general management. In such circumstances the name with which his office was labeled is of small moment. The inference of authority is to be drawn from the things he was allowed to do (*First Nat. Bank of Providence* v. *Navassa Phosphate Co.*, 119 N. Y. 256; *Martin* v. *Niagara F. P. Mfg. Co.*, 122 N. Y. 165, 175; *Martin* v. *Webb*, 110 U. S. 7). Courts are not to shut their eyes to the realities of business life. Here was a small corporation controlled by a single family. Its business was run without formality (*Hall* v. *Herter Bros.*, 83 Hun, 19; 90 Hun, 280; 157 N. Y. 694). None the less it was run, and responsibility must be centred somewhere. In the daily conduct of its affairs there was no one except the secretary who assumed to speak for it. If he was not the manager, the company had none. We think the case was for the jury.

The judgment should be reversed and a new trial granted with costs to abide the event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, HOGAN and ANDREWS, JJ., concur; McLAUGHLIN, J., not sitting.

Judgment reversed, etc.