Charles C. Lockwood, J.
The petitioners, through Harry T. Zucker of their firm, prepared and tried for the claimants that part of the Park Avenue proceeding relating to DPs 124, 125, 156 and 157.
The awards of $340,000 for the land and buildings to the fee owner, 35 Steuben Street Realty Corp., and for $35,000 for machinery and fixtures to the tenants, Scandore Paper Box Co., Inc., Continental Container Corp. and Interstate Lithographing Corp., jointly, totalling $375,000 were not appealed.
For some weeks, the city comptroller has been ready to make payment, with interest at 4% per annum from the date of title vesting, February 9, 1942. This controversy is delaying the closing.
The attorneys seek a fee of approximately $11,000 to be computed under the terms of their written retainers from the four corporations together with interest on the same at 4% from the date of title vesting, to date of payment.
Their claim is approved and supported by the Scandore brothers, the officers who directed and managed the affairs of the four corporations, and who signed the retainers and who hold three of the six directorships of each of said four corporations.
*505 The objectors, the Mariani interests, concede that the services were performed satisfactorily and do not question the reasonableness of the amount charged. They contend that the retainer was, and is, invalid, because it was not authorized or approved by a majority of the board of directors of each corporation.
This taking consisted of 43,000 square feet of land with 200 feet front on the north side of Park Avenue, running from Steuben Street to Emerson Place, improved with a seven-story concrete manufacturing loft building, formerly owned and occupied by the Westinghouse Company — a new two-story concrete building — a five-story brick storage building, and a one-story garage and delivery structure.
On the trial, the claimants called experts from the American Appraisal Company, who testified to a damage of $452,734.57, exclusive of land, and James F. Matthews, Esq., engineer and real estate expert, who claimed total damage of $476,830.52.
The city called Joseph W. Catherine, whose estimate for land, building, machinery and fixtures was $353,540 — Thomas Baifa, $351,160 — William Gr. Morrissey, $343,615 — James B. Fisher, $296,390 — and William E. Kennedy, Jr. (buildings only), $288,488.
The hearing as to this property occupied a number of court days. It was the largest holding in a single ownership in this proceeding. The condemnation record shows that the claim was thoroughly prepared and ably presented. Presumably, a good result was obtained for neither the Scandore nor Mariani interests sought to appeal.
The title to all the real estate was held by 35 Steuben Street Realty Corporation. The buildings were entirely occupied by its affiliated companies, Scandore Paper Box Co. Inc., Continental Container Corporation, and Interstate Lithographing Corporation.
Emil Scandore, Michael J. Scandore and Frank Scandore, brothers, devoted all their time to the business of the four corporations and owned 80% of the nonvoting common stock, the other 20% being owned by Frank Mariani who is engaged in another business in New Jersey and who devoted but little of his time to these four corporations.
The small amount of preferred stock of these companies, which alone had voting power, was owned one half by the Scandore brothers and one half by Frank Mariani.
Through the ownership of the preferred stock the Scandores selected three of the six members of the board of directors of each corporation and Frank Mariani the other three directors.
*506 This condemnation proceeding, long under consideration, was finally authorized by the Board of Estimate and title to this and other damage parcels vested in the city February 9, 1942. Thereafter the notice to present claims was duly published as required by law and all the property owners notified when the proceeding would be brought on for trial. They were also notified to vacate.
The Scandore brothers and the Mariana interest, each controlling three of the board of directors of the corporations, were unable to agree upon an attorney to represent them.
The last day to file notices of appearance and proofs of claim was February 26,1942. To avoid a default Louis Barnett, Esq., general counsel to the companies on an annual retainer, filed an appearance and proof of claim on February 24, 1942. He testified on these hearings ‘ ‘ there was never any intention for me to try the cases.”
Thereafter, on March 7, 1942, the law firm of Hollander and Bernheimer was retained in writing by the four corporations, the Scandores signing as either president or vice-president, as the case may be. On the same date, Louis Barnett, Esq., consented by written stipulation that Hollander and Bernheimer be substituted for him as attorneys for the four corporations in this proceeding. The companies joined in this consent by their duly elected officers. Mr. Barnett aided Mr. Zucker in the trial. For this work he is to be paid by Hollander and Bernheimer and asks nothing from the corporations and asserts no lien against the awards.
Mr. Mariani and his associates protested in writing against the retaining of Hollander and Bernheimer, but took no other affirmative action.
Hollander and Bernheimer, through a member of the firm, Harry T. Zucker, Esq., retained experts and conducted the trial. He kept Mr. Mariani fully advised by letter and invited him to attend court prior to, at the opening and during the trial. He also requested him to register his objections, if any. One Be Phillips, a friend of Mr. Mariani, attended the trial to observe and report. He was told to inform Mr. Mariani of the conduct of the proceedings and to tell him to come in, if he so desired, with another attorney to assist at the trial.
A corporation may appear in court only by an attorney. (Civ. Prac. Act, § 236.) It would be most unfortunate for a corporation with a deadlocked board of directors if no one had the power to employ an attorney to represent it in litigation, especially proceedings brought against it and its property holdings.
*507 These attorneys were not engaged to commence an action or proceeding on behalf of the corporations, but were hired to protect their interests in a proceeding brought by the City of New York to acquire title to the corporations’ property, the main asset of the realty company.
This record shows that the Scandore brothers were in complete charge of the operations of these corporations, buying materials and machinery costing many thousands of dollars and selling the products equally valuable. At first they tried in New York and in Washington to have the lines of the taking moved to the south to exclude their properties. After conferences and hearings, that application, in which both the Scandore and Mariani interests were concededly represented by Hollander and Bernheimer, was denied and title was vested in the city. They had a large, well-located plant, especially adapted to the needs of their business. As subcontractors, they were turning out special food containers for the United States Army in large quantities. They were bidding for more Government contracts. Title to the land and buildings had been taken by the city and they were ordered to move, not an easy job with the war on and well-lighted, well-built industrial plants in demand by the Federal authorities and others. It was deemed impossible to find another vacant plant to house all four companies and a new plant could not be built because of war restrictions applying to building materials. Heavy machinery is difficult to move and set up. One of the corrugated paper making machines is 185 feet long and required an open space of 230 feet to operate efficiently. Faced with this emergency, the officers directing the corporations’ affairs were compelled to act promptly.
Under the by-laws of the respective corporations, the duties and powers of the president are stated as: “He shall appoint and remove, employ and discharge, and fix the compensation of all servants, agents, employees and clerks of the corporation, other than the duly appointed officers, subject to the approval of the Board of Directors.”
The vice-president is vested with the same duties and powers during the absence or inability of the president.
The contracts of employment between the corporations and their officers were not designed and were not effective to limit the general powers of the officers under the by-laws and the general principles of corporation law.
The only question presented with which the court is here concerned is the validity of the Hollander and Bernheimer retainer.
*508 Under the circumstances disclosed by the record here the president and vice-president of these corporations had ample authority to employ counsel to protect the companies’ interests and the corporations having received the benefit of the services rendered by such counsel should pay for the same. The court holds the retainer valid and binding. (Twyeffort v. Unexcelled Mfg. Co., 263 N. Y. 6; Hardin v. Morgan Lithograph Co., 247 N. Y. 332; Potter v. New York Infant Asylum, 44 Hun 367, affd. without opinion 118 N. Y. 684; Elblum Holding Corp. v. Mintz, 120 N. J. L. 604.)
The petition is granted and the petitioners adjudged to have a valid lien upon the awards in accordance with the retainers.