Fuld, J.
On this appeal, here by permission of the Appellate Division, we are asked to decide whether, in light of the particular facts and circumstances presented, the secretary-treasurer had authority to institute and prosecute this action on behalf of his corporation.
In 1938, Isidor Rothman and William Schneider organized the plaintiff corporation to manufacture and sell semiprecious stone rings. Each of them, along with his respective wife, owned 50% of the corporate stock, and all four were directors. Roth-man was president and Schneider, secretary-treasurer. The corporate by-laws vested in the board of directors ‘ ‘ control and general management of the affairs and business of the Company ”, the directors were to “ act as a Board, regularly convened, by a majority ” and each director was to have one vote. The president had the duties of calling directors’ meetings and presiding at them, presenting reports of the company’s condition, making and signing contracts, seeing that records were properly kept and handling personnel matters. The secretary was charged with the care of minutes, records and correspondence and with serving notice of meetings, and the treasurer was entrusted with the care of corporate funds and finances. As a practical matter, however, no directors’ meetings were held, and Rothman and Schneider, according to the latter, ‘ ‘ acted as equals and as partners * * * signed papers indiscriminately either Mr. Rothman as President and I as Secretary-Treasurer, verifying complaints or answers in litigation without any question ever having been raised.”
On January 18,1954, Rothman and Schneider entered into an agreement to dissolve the corporation, it being explicitly provided that during the period of dissolution Schneider was to be *496 in charge of the liquidation. The agreement also stipulated that he was to ‘ ‘ have the right to announce to the trade, the retirement of ” Rothman, “ to advise the trade of the fact that [he, Schneider] will operate the business formerly conducted by the corporation ”, and to receive and handle all of the corporation’s correspondence in the future. Neither party, the agreement further recited, was to “ settle or compromise any claim or controversy in favor of or against the corporation unless by mutual consent of the party stockholders.” Subsequent to this agreement, Schneider hired an attorney to defend two suits against the corporation, in one of which the corporation’s president, Rothman, appeared as a witness. Despite the agreement to dissolve, however, defense counsel denied that the corporation was “ in the process of dissolution ”, declaring that Rothman had given Schneider an option to purchase his share of the corporate stock, but that Schneider had not exercised the option within the time specified. At all events, the corporation has not yet been formally dissolved.
From 1947 to 1954, the corporation had employed Sam Becker-man, the son-in-law of Rothman and one of the defendants herein, as a salesman. In 1955, the corporation, at the instance of Schneider, brought the present suit against Beckerman and his partner Lerner; Rothman was not consulted. The complaint alleges that, while in plaintiff’s employ, Beckerman had secretly formed a partnership with Lerner, converted a number of plaintiff’s sample rings and then sold to plaintiff’s customers rings which it manufactured from such samples at lower prices than plaintiff charged. Plaintiff sought judgment for some $30,000.
Asserting that the by-laws of the corporation required the consent of a majority of the board of directors to the institution of a lawsuit and that the Rothmans, holders of one half of the stock, opposed the present one, defendants sought dismissal of the action and moved to vacate service of the summons and complaint. An affidavit by Rothman in support of the application recited that he did not believe the action had any merit and that neither he nor his wife desired to have it prosecuted.
The court at Special Term denied the motion. The Appellate Division affirmed and certified three questions which, in effect, *497 pose the issue of the secretary-treasurer’s “ authority to authorize the commencement of this action.”
The defendants place their primary reliance on Sterling Ind. v. Ball Bearing Pen Corp. (298 N. Y. 483), where we held that the president of plaintiff corporation lacked authority to institute a suit upon the company’s behalf. However, as the opinion indicates, the decision turned largely on the facts of the case. In the first place, the suit was against so-called “ insiders,” that is, another corporation consisting of two individuals who owned half of plaintiff corporation’s stock and were two of its four directors and, in the second place, plaintiff’s board of directors actually refused, when requested to act, to give the president permission to institute the action. In view of such facts, wrote the court, “ there is no question here of any presumptive or prima facie authority in the president of a corporation qua president to institute litigation and engage counsel therefor. [Cases cited.] Nor is there question of apparent authority, since we consider here no rights of outsiders or third parties, but only those of organizers of plaintiff corporation and representatives of Pen Co. Any actual or implied authority which Middleman may have had as president to commence this action was terminated when a majority of the board of directors at the special meeting refused to sanction it ” (p. 490).
As we have already suggested, our decision in Sterling does not mean that a corporation may not institute suit without a formal vote of authorization by the board of directors. Where there has been no direct prohibition by the board, then, it has been held, the president has presumptive authority, in the discharge of his duties, to defend and prosecute suits in the name of the corporation. (See, e.g., Matter of Bernheimer, 266 App. Div. 868, affg. 4 Misc 2d 503; Warwick Sportswear Co. v. Simons, 4 Misc 2d 482; Regal Cleaners & Dyers v. Merlis, 274 F. 915, 917; Lydia E. Pinkham Medicine Co. v. Gove, 298 Mass. 53, 65; Elblum Holding Corp. v. Mintz, 120 N. J. L. 604, 608; see, also, 2 Fletcher’s Cyclopedia Corporations [1954 Rev. Yol.], § 618.1.) And, when directors deadlock over corporate litigation and the president hires an attorney to sue or defend for the corporation, *498 he may proceed and recover compensation for his work. (See, e.g., Matter of Bernheimer, supra, 266 App. Div. 868, affg. 4 Misc 2d 503; see, also, Potter v. New York Infant Asylum, 118 N. Y. 684, affg. 44 Hun 367.)
While in the normal course the implied authority vested in an actively functioning president will not devolve upon a secretary or treasurer, such officer will be deemed to have authority to act and speak on behalf of the corporation where he has been the one actually managing its business. (See Barkin Constr. Co. v. Goodman, 221 N. Y. 156, 161; Perry v. Council Bluffs City Water Works Co., 143 N. Y. 637, affg. 67 Hun 456, 464-466; Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 479; Phillips v. Campbell, 43 N. Y. 271, 272; Schirone v. Hochheiser & Weisberg, 237 App. Div. 723, affd. 263 N. Y. 624.) And, by parity of reasoning, where a secretary-treasurer has alone been running the company, alone conducting its affairs generally without intervention or direction from board of directors or president, there is no reason, in law or practice, why he should not be able to institute an action against an outsider, on the corporation’s behalf, to preserve its existence or otherwise protect its interests. Certainly, he is vested with sufficient authority from the corporation to “ speak for it ” (Barkin Constr. Co. v. Goodman, 221 N. Y. 156, 161, supra) to succeed against the third party’s protestation that he lacks the power to bring the suit.
In the case before us, Schneider did not have express authority to institute litigation in the corporation’s name; the by-laws gave bim no such power and the board of directors, not requested to pass upon the matter, took no action. However, as the discussion already indicates, the evidence is clear and strong that he did have implied authority to proceed against these defendants. He and Rothman had acted “ as equals and as partners ”, neither questioning the authority of the other, and both signing papers and verifying pleadings in litigation ‘ ‘ indiscriminately ”. WTiether or not that course of conduct may in and of itself denote authority in one to act without the consent of the other, we need not say, for in this case the agreement to dissolve the corporation plus the subsequent dealings of the parties convincingly demonstrate that Rothman gave up active participation in the business of the corporation in January of 1954 *499 and that Schneider was for all intents and purposes its general manager and executive head, undoubtedly with the full knowledge and acquiescence of the other stockholders and directors. It is true that he was not permitted to settle claims in favor of or against the corporation but, without any demur or objection from Eothman, he had hired counsel to defend two suits brought against it. While counsel for defendants now maintain that Eothman did not know, and would not have approved, of Schneider’s defense of one of these suits, this simply points up the continued course of conduct of these men — Schneider’s extensive powers vis-a-vis the management of the corporation, with all that that implies, and Eothman’s almost complete withdrawal from the company and its affairs.
It is to be borne in mind that we are dealing with a small closely held corporation, whose affairs were conducted without formality of any kind and that, following the agreement to dissolve the corporation, the president went into £ £ retirement, ’ ’ leaving the entire management and operation of the company to its secretary-treasurer. His was the headship, the responsibility for the conduct of the corporate business being left with him. Having in mind the realities of the situation, the courts below were fully warranted in concluding that the company’s only active officer was authorized to institute and prosecute such a suit as this, and certainly the defendants before us, complete strangers to the corporation and actually charged with converting a portion of its assets, should not be permitted to question his authority and thereby frustrate the action.
The order of the Appellate Division should be affirmed, with costs. The first question certified should be answered in the affirmative, the second and third in the negative.
Conway, Ch. J., Desmond, Dye, Froessel, Yan Voorhis and Burke, JJ., concur.
Order affirmed, etc.