[Civ. No. 24808.   Second Dist., Div. One.   Mar. 21, 1961.]

SEALAND INVESTMENT CORPORATION (a Corporation), Appellant, v. EMPRISE INCORPORATED (a Corporation) et al., Respondents.

Vaughan, Brandlin & Baggot, Emil Steck, Jr., and Abraham Berman for Appellant.

Frank B. Belcher, Belcher, Henzie & Fargo and Beardsley, Hufstedler & Kemble for Respondents.

FOURT, J.—On August 26, 1959, Sealand Investment Corporation (hereinafter referred to as "Sealand") filed a "Complaint for Diversion of Corporate Assets, Misappropriation of Corporate Opportunities, to Impose a Constructive Trust, for an Accounting, and for Breach of Fiduciary Relationship," and named as defendants "Emprise Incorporated, a California corporation, Joseph A. Spray and Charles P. Gould, individually, Spray, Gould and Bowers, a partnership composed of Joseph A. Spray, Charles P. Gould and C. W. Bowers, J. P. Shirley, Jr., Gunther J. Shirley, Robert G. Shirley, Joseph A. Shirley, Louise Mary Shirley Cornell, Helen Adair Shirley, Edward Shirley, Michael Shirley, Franklin Shirley, Jacquiline C. Shirley, Jann E. Shirley, Hetty Shirley, John Shirley, Linda Shirley, Christopher Shirley, Florence Shirley, Loeta Spray, Joseph L. Spray, Terry Spray, Mary D. Gould, Lawrence K. Gould, Doe One through Doe Fifty."

On January 15, 1960, "the defendants, severally, each for himself or itself, and not one for the other" filed a "Notice of Motion to Strike" wherein it was set forth that a motion "for an order (1) striking the complaint herein from the files and (2) dismissing the above entitled action" would be made on January 27, 1960. The motion was to be made among others, upon the ground *"that Sealand Investment Corporation—has never authorized, directed, sanctioned or ratified, either directly or indirectly, the filing of said complaint or the commencement of the above entitled action; that said complaint was filed and the above entitled action commenced without any proper authorization by Sealand Investment Corporation plaintiff herein, or by the board of directors or by an officer or employee of said corporation having the power or authority to cause or direct the filing of such complaint or the commencement of the above entitled action*; that the attorneys appearing of record herein for said plaintiff corporation are not and have never been employed by said corporation to act as its attorneys in this matter, either for the purpose of filing a complaint or commencing said action or otherwise; that said attorneys have never been authorized by said corporation,

nor by any officer thereof with authority so to do, to file the complaint herein or to commence or maintain this action or to act in any other manner or capacity either as attorneys or otherwise for or on behalf of the plaintiff corporation; and that said complaint was filed and said action commenced without any proper authority or authorization by or on behalf of the plaintiff corporation so to do.'' (Emphasis added.)

On the same date a "Declaration of Gunther Shirley in Support of Motion to Strike" was filed. He is the president, director and owner and holder of one-half of the issued and outstanding stock of plaintiff corporation.

It is therein set forth in part as follows:

"(2) Katherine Martin Powell, one of the persons who signed the complaint herein, is secretary-treasurer and a director of said corporation, and her husband, Edward J. Powell, who also signed the complaint, is a director of said corporation. . . .

"(5) Katherine Martin Powell is not and never has been the president of Sealand, or its general manager, or in charge of the general conduct of its business and affairs; and

"(6) Neither Katherine Martin Powell or Edward J. Powell were ever authorized by Sealand's board of directors or by Gunther Shirley, its president, to commence this action on behalf of Sealand or to consult with or employ the firm of Vaughan, Brandlin and Baggot or Emil Steck.

"(7) The board of directors of said corporation have never authorized or ratified the commencement of this action. No officer, employee, agent, director, or shareholder of the corporation has ever made any request to me as president or to the board of directors of said corporation to consider the filing of a complaint relating to the subject matter set forth in said complaint in any way. As president of the corporation, I have never authorized the commencement of this action, or given any instructions to any of the agents or employees of the corporation that such an action be commenced. . . ."

On February 17, 1960, an "Affidavit of Katherine E. Martin Powell in opposition to Motion to Strike" was filed. Among other things it provided in part:

"12. At the time the present action was filed affiant and her husband, Edward J. Powell, constituted two of the four directors of plaintiff, the other two directors being defendants Gunther J. Shirley and J. P. Shirley, Jr., both of whom have an interest adverse to the corporation in the present action.

At that time affiant was secretary-treasurer of plaintiff corporation and, together with defendant Gunther J. Shirley, the president of the corporation, was one of the only two officers of plaintiff corporation active in plaintiff's affairs . . . Affiant and her husband, Edward J. Powell, as directors of plaintiff corporation filed the present action on behalf of said corporation and fully authorized . . . to act as attorneys for said corporation and to file and prosecute the present action. Such authority has never been rescinded on behalf of plaintiff corporation by affiant and her husband, Edward J. Powell.''

The motion was heard and argued on March 30, 1960.

By a minute order dated February 18th and entered February 23, 1960, the defendants' motion to strike was granted and plaintiff was given 30 days to amend. Plaintiff failed to amend the complaint and by a minute order dated March 30th and entered April 1st, the defendants' motion to dismiss the action was granted and costs were awarded against the plaintiff corporation. On April 11, 1960, a ''Judgment of Dismissal and for Costs'' was filed. It was entered April 13, 1960. The judgment provides in pertinent part as follows:

''Having heard oral argument from counsel, having examined all the affidavits, pleadings and documents before the court and being fully advised in the premises, and it appearing to the court:

''1. Heretofore, on February 18, 1960, by order duly given, made and entered, the court granted defendants' motion to strike the complaint, allowing plaintiff 30 days within which to file an amended complaint . . . The period allowed by the court within which to file an amended complaint has now elapsed and no amended complaint has been filed herein; and

''2. The plaintiff named in the complaint herein, Sealand Investment Corporation, a corporation, has never instructed anyone to commence this action in its name or for or on its behalf and the said corporation has never authorized or ratified the filing of said complaint or the commencement of this action; and

''3. The said complaint was filed by . . . pursuant to instructions and authorizations from Katherine E. Martin Powell, and Edward J. Powell; and

''4. The court is without authority to award costs against Katherine E. Martin Powell and Edward J. Powell, since they are not named as parties to this action.

''5. The attorneys who commenced this action at the request of Katherine E. Martin Powell and Edward J. Powell

have requested that the costs in this dismissal be taxed against the corporation which was named as plaintiff herein.

"6. Defendants are entitled to have this action and the complaint herein dismissed and to recover judgment for costs against plaintiff.

"Now, therefore, it is hereby ordered, adjudged and decreed that this action and the complaint herein be and the same are hereby dismissed as to each defendant.

"It is further ordered, adjudged and decreed that the motion of defendants for imposition of costs against Katherine E. Martin Powell and Edward J. Powell be and it is hereby denied.

"It is further ordered, adjudged and decreed that the defendants . . . and each of them do have and recover from plaintiff their respective costs of suit herein . . ."

On April 18th, 1960, a "Notice of Appeal and Request for Clerk's Transcript" was filed wherein "Sealand Investment Corporation . . . hereby appeals . . . from the judgment in said action rendered in favor of defendants and against the plaintiff . . . and from the whole of said judgment."

It was stipulated at the oral argument that the appeal of Sealand was from the dismissal aspects of the judgment only and not from the cost phases thereof, and that the words "and from the whole of said judgment," as used in the notice of appeal, mean and refer in effect only to that part of the judgment which reads as follows: "the complaint herein be and the same are hereby dismissed . . ."

The only real question involved is whether the secretary-treasurer, who owns 50 per cent of the corporate stock; is a director; and along with her husband constitute two of the four directors, may initiate an action on behalf of and in the name of the corporation against the other two directors who own the other 50 per cent of the stock in plaintiff, one of whom is the president thereof, and certain outsiders, for the alleged violation of their fiduciary duties to the corporation and defrauding of the corporation.

We think this is a case of first impression in this state. Corporations Code, section 800, sets forth the powers of directors. Therein it provides as follows:

"*Subject to limitations of the articles* and of this division as to action which shall be authorized or approved by the shareholders, *all corporate powers shall be exercised by or under authority of, and the business and affairs of every*

*corporation shall be controlled by, a board of not less than three directors."*

Katherine E. Martin Powell and Edward J. Powell are in our opinion seeking judicial-legislation so as to enable them to circumvent the available statutory remedy of a derivative action (Corp. Code, § 834).

The powers and duties of the directors and officers of plaintiff corporation are set forth in article IV through article IX of the by-laws of said corporation. Therein, it is provided in pertinent part as follows:

"*Article IV. Power of directors.*

"Section 1. ...

"Section 2. The directors, by a majority vote, may elect, appoint or remove at pleasure, without previous notice, all appointive officers, managers, agents and employees of the corporation, prescribe their duties, fix their compensation, etc.

"Section 3. *The directors shall have power to conduct, manage and control the affairs and business of the corporation,* and to make rules and regulations therefor not inconsistent with the laws of the State of California or by-laws of this corporation. (Emphasis added.)

"*Article VII. President.*

"Section 1. ...

"Section 2. ...

"Section 3. ...

"Section 4. ...

"Section 5. He shall see that all duties of all officers and employees are properly performed and *shall at all times exercise a general direction of the affairs of the corporation.* (Emphasis added.)

"Section 6. *He shall employ and discharge such managers and employees as he may find necessary to transact the business of the corporation.* (Emphasis added.)

"Article IX. Secretary-treasurer.

"Section 1. The board of directors shall elect a secretary-treasurer.

"(a) It shall be the duty of the secretary-treasurer, *in addition to the usual duties pertaining to the office,* to attend all sessions ... and keep a record of the proceedings ... and read the same at the next meeting. (Emphasis added.)

"(b) ... keep the book of blank certificates of stock, the corporation's minute record ...

"(c) . . . keep the corporate seal and affix it to all papers requiring the same.

"(d) . . . keep . . . a proper share register . . .

"(e) . . . serve all notice . . .

"(f) . . . keep . . . full and separate accounts of receipts and disbursements . . . deposit all money, checks and other valuable effects . . . keep and maintain adequate and correct accounts of the corporation's properties and business transaction . . .

"(g) . . . receive and keep all of the funds of the corporation deposited . . .

"(h) . . ."

As noted the directors have the power to conduct, manage and control the affairs and business of the corporation and the president is expressly empowered to "exercise a general direction of the affairs of the corporation." No *managerial* powers, as distinguished from *ministerial* powers, are conferred upon the secretary-treasurer.

As stated in 13 California Jurisprudence 2d, Corporations, page 104, section 334:

"The secretary of a corporation . . . is a *ministerial* officer under control of the manager and the board of directors. His authority does not extend to the transaction of corporate business in his own independent volition and judgment . . . [H]is authority to represent the corporation generally as a manager, or to contract for it or transfer property, *will not be presumed from his office,* and must affirmatively be shown to exist . . .

"*In the absence of express or implied authority* the secretary cannot transfer or mortgage corporate property . . . *Likewise, he has no inherent authority* to assume any obligation on behalf of the corporation . . ." (Emphasis added.) (See: *People* v. *International Steel Corp.,* 102 Cal.App.2d Supp. 935 [226 P.2d 587]; *Bourne* v. *Root,* 125 Cal.App. 461 [13 P.2d 1066]; *Thomasson* v. *Grace M. E. Church,* 113 Cal. 558 [45 P. 838]; *Buena Vista Oil Co.* v. *Park Bank of Los Angeles,* 39 Cal.App. 710 [180 P. 12]; *Guernsey* v. *Johnson Organ etc. Co.,* 29 Cal.App. 699 [157 P. 527]; *Walsh* v. *American Trust Co.,* 7 Cal.App.2d 654 [47 P.2d 323].)

*Kelly* v. *Ning Yung Benevolent Assn.,* 2 Cal.App. 460 [84 P. 321] involved an action by an assignee of an attorney to recover for certain legal services rendered. A careful reading of that case indicates, however, that a secretary, merely by

virtue of his position as such, is not authorized to bind the corporation. The court spoke in terms of ratification and estoppel in the Kelly case, and neither of such elements is present in the case before us.

Appellant relies in great part upon the following cases: *Gottlieb* v. *Avery Realty Co.*, 182 La. 703 [162 So. 571]; *Warwick Sportswear Co.* v. *Simons,* 4 Misc. 2d 482 [13 N.Y.S.2d 321]; *Rothman & Schneider, Inc.* v. *Beckerman,* 2 N.Y.2d 493 [161 N.Y.S.2d 118, 6 A.L.R.2d 895]; *Gallagher* v. *Texagon Mills* (S.D.N.Y. 1946), 67 F.Supp. 845; *West View Hills, Inc.* v. *Lizau Realty Corp.,* 6 N.Y.2d 344 [160 N.E.2d 622, 189 N.Y.S.2d 863]; *Recamier Manufacturing Co.* v. *Seymour,* 15 Daly 245 [5 N.Y. Supp. 648]; *First Reformed Presbyterian Church* v. *Bowden,* 14 Abb. (N.C.) 356; *Elblum Holding Corp.* v. *Mintz,* 120 N.J.L. 604 [1 A.2d 204].

In *Gottlieb* v. *Avery Realty Co.,* 182 La. 703 [162 So. 572], it is stated in part as follows:

"Plaintiff . . . excepted to this proceeding, which was brought by Louis U. Babin, as secretary-treasurer and manager of defendant corporation, on the . . . ground that it disclosed no authority for the institution of the proceeding by resolution of the board of directors of defendant corporation, *and that Babin, as secretary-treasurer, was without authority to institute the proceeding."* (Emphasis added.)

In reversing the trial court's dismissal of the action, the court stated at page 573:

"The Avery Realty Company, as mortgagor, is clearly entitled to assert such right in the present case. However, *an unusual, if not unprecedented, situation exists in the case before us.* Gottlieb, the mortgagee, is the president of the Avery Realty Company, and has an interest adverse to that of the corporation, the mortgagor. Plaintiff and Babin, the secretary-treasurer, are the only officers, the only members of the board of directors, and the only stockholders of the corporation, each owning one-half of the stock.

"The interest of plaintiff is opposed also to that of Babin, a stockholder and creditor, and to the other creditors. Under these extreme conditions it does not lie in plaintiff's mouth to assert that Babin, secretary-treasurer of the corporation, cannot invoke the Moratorium Law on behalf of the corporation, because he has not been authorized by a resolution of the board of directors to institute this suit, or because he is not the proper officer of the corporation to act in its behalf. It is idle to contend that a president of a corporation can be permitted,

through adverse interest, to block every effort of a corporation *to save its property from being sacrificed at forced sale during a public economic emergency,* to the detriment of the corporation, its stockholders and creditors, and thereby enrich himself, and that, although the corporation may have a clear legal right to demand a moratorium, *yet it is merely a right without a remedy, either at law or in equity, for its enforcement.* (Emphasis added.)

''We hold, therefore, under the facts of this particular case, that the secretary-treasurer of the corporation had the right and authority to institute the present proceeding.''

Unlike the situation in the Gottlieb case, there is a remedy available in the case at bar, namely: a stockholder's derivative action and furthermore we are not presently confronted with a public economic emergency.

*Warwick Sportswear Co.* v. *Simons,* 4 Misc. 2d 482 [13 N.Y.S.2d 321] is a short opinion, the facts of which are not fully set forth and further, it is not specifically stated who brought the action in behalf of the corporate plaintiff. Under the peculiar circumstances we deem that it is not wholly unreasonable to assume that it was the president. The court stated at page 321:

''Upon its face the complaint states a cause of action in favor of plaintiff-corporation against the defendant for the conversion by defendant of plaintiff's property, and the action should not be dismissed solely on the ground of the lack of any authority from the two-man board of directors (one of whom is the defendant, and the other the corporation's president) to bring suit.''

If our assumption is correct that it was the president who authorized the action against one of the plaintiff corporation's directors, then the factual dissimilarity is obvious.

*Rothman & Schneider, Inc.* v. *Beckerman,* 2 N.Y.2d 493 [141 N.E.2d 610, 161 N.Y.S.2d 118, 64 A.L.R.2d 895], involved an action against strangers to the corporation as distinguished from an action against directors and/or officers of plaintiff corporation. The court stated in that case at p. 119 [161 N.Y.S.2d]:

''On this appeal, . . . we are asked to decide whether, *in light of the particular facts and circumstances presented,* the secretary-treasurer had authority to institute and prosecute this action on behalf of his corporation.'' (Emphasis added.)

Rothman and Schneider organized the plaintiff corporation. Each of them, along with his respective wife, owned 50 per cent of the corporate stock, and all four were directors. ''Roth-

man was president and Schneider, secretary-treasurer. The corporate by-laws vested in the board of directors 'control and general management of the affairs and business of the Company,' the directors were to 'act as a Board, regularly convened, by a majority' and each director was to have one vote. . . . As a practical matter, however, no directors' meetings were held, and Rothman and Schneider, according to the latter, 'acted as equals and as partners . . . signed papers indiscriminately either Mr. Rothman as President and I as Secretary-Treasurer, verifying complaints or answers in litigation without any question ever having been raised.''

The court in sustaining the trial court's determination that the service of summons and complaint should not be vacated, stated at pages 121-123 [161 N.Y.S.2d] :

''Where there has been no direct prohibition by the board, then, it has been held, *the president* has presumptive authority, in the discharge of his duties, to defend and prosecute suits in the name of the corporation. [Citations.] And, when directors deadlock over corporate litigation and the president hires an attorney to sue or defend for the corporation, he may proceed and recover compensation for his work. [Citations.]

*''While in the normal course the implied authority vested in an actively functioning president will not devolve upon a secretary or treasurer,* such officer will be deemed to have authority to act and speak on behalf of the corporation *where he has been the one actually managing its business.* [Citations.] And, by parity of reasoning, *where a secretary-treasurer has alone been running the company, alone conducting its affairs generally without intervention or direction from board of directors or president, there is no reason, in law or practice, why he should not be able to institute an action against an outsider, on the corporation's behalf, to preserve its existence or otherwise protect its interests.* Certainly, he is vested with sufficient authority from the corporation to 'speak for it,' *Barkin Constr. Co.* v. *Goodman,* 221 N.Y. 156, 161 [116 N.E. 770, 772], *supra, to succeed against the third party's protestation that he lacks the power to bring the suit. . . .*

''It is to be borne in mind that we are dealing with a small closely held corporation, whose affairs were conducted without formality of any kind and that, following the agreement to dissolve the corporation, *the president went into 'retirement,' leaving the entire management and operation of the company to its secretary-treasurer.* His was the headship, the responsibility for the conduct of the corporate business being left with

him. Having in mind the realities of the situation, the courts below were fully warranted in concluding that *the company's only active officer* was authorized to institute and prosecute such a suit as this, and certainly the defendants before us, *complete strangers to the corporation* and actually charged with converting a portion of its assets, *should not be permitted to question his authority and thereby frustrate the action."* (Emphasis added.)

The factual dissimilarities in the Rothman case and the case before us are manifest.

In *Gallagher* v. *Texagon Mills,* 67 F.Supp, 845, certain unspecified officers and directors of a corporation instituted an action against the corporation. The question presented was whether the aforesaid officers and directors could deprive the corporate defendant of a defense to the action. The laws of New Jersey disqualify a director from voting upon a resolution concerning the matter in which he is interested. The court in holding that the disinterested directors and officers could assert the defense in the corporate name stated at page 846:

". . . I should think that the officers and directors of a corporation against which they have instituted suit should not be permitted, in effect, to deprive the defendant of a defense that may be sufficient to defeat the action. In order that no such result may come about, the officers and directors of the defendant who believe that the corporation has a valid defense should be permitted to protect its rights, and to do so, in the name of the corporation. [Citations.]"

The differences between the Gallagher case and the case before us are evident.

Both appellant and respondents rely upon the case of *West View Hills, Inc.* v. *Lizau Realty Corp.,* 6 N.Y.2d 344 [160 N.E.2d 622, 189 N.Y.S.2d 863]. In that case the president of plaintiff corporation brought the action in the name of the corporation against defendant corporation. In the first cause of action plaintiff alleged that it had been wrongfully and improperly required to pay for work, labor and services entering into the construction of an apartment owned and built by defendant corporation. For the second cause of action plaintiff alleged that certain individual defendants (that is, majority of board of directors of plaintiff corporation) had violated their fiduciary duties as directors and officers of plaintiff corporation. The individual defendants were the officers and directors of defendant corporation.

The question presented was "whether the *president* of the plaintiff corporation, at the time the action was originally instituted, had the power, as president, to institute the action on behalf of the corporation." [Emphasis added.]

The majority opinion held that he did have the authority and stated at pages 864-866 [189 N.Y.S.2d] in part as follows:

". . . when there has been no direct prohibition 'the president has presumptive authority, in the discharge of his duties, to defend and prosecute suits in the name of the corporation' (*Rothman & Schneider* v. *Beckerman*, 2 N.Y.2d 493, 497 [161 N.Y.S.2d 118, 121, 64 A.L.R.2d 895]; *Matter of Paloma Frocks* [*Shamokin*], 3 N.Y.2d 572 [170 N.Y.S. 2d 509, 65 A.L.R.2d 1317]; *Twyeffort* v. *Unexcelled Mfg. Co.*, 263 N.Y. 6 [188 N.E. 138]; *Hardin* v. *Morgan Lithograph Co.*, 247 N.Y. 332 [160 N.E. 388].)

"This is as it should be for unless the president actually or impliedly possesses such power the corporate interests may be prejudiced if not entirely destroyed. While, ordinarily, the powers of the president of a corporation are often enumerated either in the articles of incorporation or in the by-laws, it is not usual to find in them any reference to the power to defend or institute litigation in the name of the corporation. However, . . . in situations requiring the exercise of such power to preserve and protect the interests of the corporation, *it will be implied.* This case presents such a situation. . . .

"We point out that in Rothman, *supra*, which dealt with an internal problem between equally divided interests in a close corporation, we recognized that a corporation is a separate, independent legal entity notwithstanding that, for convenience, the parties managed the corporation in disregard of accepted corporate procedures, much in the manner of a partnership. Here, the necessity of recognizing that a corporate entity has independent, separate legal rights is even more emphatic. . . . The coincidence that the plaintiff and defendant corporations were owned by the same individuals who, in turn, constituted the respective boards of directors makes it even more imperative to recognize that West View, as a corporation, has an independent and separate cause of action.

"This is not the classic situation requiring resort to a stockholders' derivative action to protect minority interests. To be sure, President Zaubler, as an individual stockholder, is now in the minority, *but that fact does not deprive him of his right and duty to perform the obligations and functions of his*

*office as president,* nor does it prevent the corporation, as a corporation, from commencing an action in its own behalf simply because a majority of its board of directors are in a position to withhold authorization. . . .

"*Absent a provision in the by-laws or action by the board of directors prohibiting the president from defending and instituting suit in the name of and in behalf of the corporation, he must be deemed, in the discharge of his duties, to have presumptive authority to so act.* Under these circumstances, the within action was properly instituted by the *president* in the name of the corporation, *in the exercise of his implied authority to protect and preserve the interest of the plaintiff corporation.*" (Emphasis added.)

It is readily apparent why the respondents would cite the West View Hills, Inc. case because it has to do with the president's power, but we fail to see where the appellant can find anything therein which is of assistance to a secretary or to a secretary and a director in the circumstances of the case before us.

In *Recamier Manufacturing Co.* v. *Seymour,* 15 Daly 245, 24 N.Y.St.Rep. 54 [5 N.Y.S. 648], the president of plaintiff corporation, who was also a trustee thereof, authorized an action in the name of plaintiff corporation against certain other trustees and officers of plaintiff corporation for an accounting.

"*The question presented* for decision upon the motion to discontinue the action and dismiss the complaint *is whether the president of a corporation, being a trustee, may authorize and maintain an action in the name of a corporation without the authority of the board of trustees, and against the express direction of the board.* Ordinarily he may not. In the board of directors or trustees is vested the authority to undertake litigation on behalf and in the name of the corporation. *But this rule has manifestly no application where a majority of the directors or trustees are engaged in the wrongful diversion of the corporate funds, or other injury to its business, and the neglect to sue or the resolution to discontinue suit or suits already commenced to recover the moneys diverted, or to remedy the wrong and injury committed, are simply acts in furtherance of the said breaches of trust. In such a contingency any trustee not implicated in the wrong may authorize the bringing of the action which the board of trustees should have authorized. The minority of the board, and any single member of it, is not divested of his office or of its powers and duties by the unfaithfulness of his colleagues.* So it was

held in the case of *Church* v. *Bowden,* 14 Abb. N.C. 356. *It was said that, the majority of the trustees by their conduct having virtually abdicated their official functions so far as the bringing of suit was concerned, the remaining trustee might sue in the name of the corporation.* It was added, however, that in a case of doubt as to which of the trustees is in the right it would be inexpedient to permit the minority to sue in the name of the corporation . . ." (Emphasis added.)

While the Recamier case involves the authority of the president, who is also a trustee, its holding is based, not upon the powers and authority of the office of the president, but upon the powers of "innocent" directors and trustees to maintain an action in the name of the corporation. This case might support the secretary-treasurer's maintenance of the action in the name of the corporation merely because said secretary-treasurer is also a director (supposedly an innocent director). However, in any event later New York cases do not seem to follow the Recamier case.

*First Reformed Presbyterian Church* v. *Bowden,* 14 Abbott's New Cases 356 concerns a situation in no wise comparable to the present case. Plaintiff was a religious corporation organized under a special statute. The action was brought to restrain the defendants from diverting the temporalities of the plaintiff to the purposes of a denomination other than to which the church members of the corporation belonged. Defendants argued that the plaintiff did not authorize the bringing of the action. Because of the statutory provisions involved and the unusual circumstances present the court ruled in favor of the plaintiff. There is no special statute to concern us in the case we are considering.

*Elblum Holding Corp.* v. *Mintz,* 120 N.J.L. 604 [1 A.2d 204], involved the question of whether the *president* of a corporation, as such, has authority to employ and authorize an attorney to institute an action at law on behalf of the corporation against the corporate treasurer for rent due. The action was started at the behest of the president without official sanction of the board of directors. The control of the corporation was equally divided between two opposing factions. The court stated at pages 205-206 [1 A.2d], in part as follows:

". . . We desire at the outset to mark the fact that the question here requiring decision is one of first impression with us. Our courts have not heretofore . . . decided whether a president of a corporation, qua president, has the author-

ity to employ and authorize an attorney to institute a suit in behalf of his corporation. Nor is there any concordance in the decisions of our sister states or in the writings of eminent and acknowledged scholars upon the subject.

". . . there is, on the one hand, a respectable body of authority that, apart from the acts done by a president of a corporation in the course of its ordinary business, of acts done in pursuance of clothed, apparent authority, of acts done as incidental to his office, the powers of a president of a corporation to do a particular act depends upon the powers conferred upon him, either by statute, or by charter of his corporation, or by the by-laws, or by the directors thereof. *And the mere fact he is president, without more, does not imply that he has any greater power than any other director.* The following are some of the authorities so holding: [Citations including *Campbell* v. *Hanford,* 67 Cal.App. 155 [227 P. 234].]

"On the other hand, there is also a body of respectable authority to the effect that a president of a corporation, as such, may employ and authorize counsel to institute a suit in behalf of his corporation. [Citations.] . . .

". . . our courts have held that the president of a corporation, as such, may, without special authority, perform all the acts, which either because of usage or necessity are incidental to his office, and may bind the corporation by contracts arising in the usual course of its business. And beyond this he, as president, has no more control over the corporate funds than any other director. [Citations.] And we have held that a president of a corporation may in pursuance of a power incidental to his office take the necessary steps in defense of litigation prosecuted against his corporation in order to preserve the corporate assets. [Citations.]

"If, as we have seen, a president of a corporation may take the necessary steps in defense of litigation prosecuted against his corporation in order to preserve the corporate assets, so, in reason and justice, he may employ and authorize counsel to institute necessary legal proceedings for the like purpose of preserving the interests of his corporation. We so hold. For, in each instance the power exercised by the chief executive officer of a corporation is to accomplish the same result . . ." (Emphasis added.)

To summarize the cases cited by appellant (with the exception of the *First Reformed Presbyterian Church* case), all but two of them (i.e., *Gottlieb* v. *Avery Realty Co.* and *Roth-*

*man & Schneider* v. *Beckerman*) involved the authority of the president of a corporation to institute an action in behalf of and in the name of the corporation.

The factual situation of the Gottlieb case is as heretofore indicated dissimilar and it appeared in that case that unless the secretary-treasurer was permitted to invoke the moratorium law on behalf of the defendant corporation said corporation would have had a right without a remedy.

*Rothman* and *Schneider* involved an action against strangers to the corporation. The court indicated in that case that normally the authority vested in the president would not devolve upon a secretary or a treasurer. However, in that particular case the secretary-treasurer was in fact running the corporation and also, ". . . complete strangers to the corporation . . . actually charged with converting a portion of its assets, should not be permitted to question his authority and thereby frustrate the action."

Whatever actual or implied authority resides in the *president* to initiate an action in the name of a corporation, there is ordinarily no such implied, presumed or inherent authority in the secretary-treasurer or other officers of the corporation.

The 1956 New York case of *Kardweel Corp.* v. *Karper,* 1 Misc. 2d 707 [148 N.Y.S.2d 132] illustrates the distinction. The action in that case was brought by the corporation for reformation of a contract. One of the defendants, who was president of the plaintiff corporation, moved to set aside the summons and complaint, and to strike out the appearance of plaintiff's attorney on the ground that the corporation had not authorized the suit.

The moving defendant was the holder of 50 per cent of the outstanding stock of plaintiff corporation, and he and his wife were two of the four directors of plaintiff. The plaintiff corporation asserted through its *vice-president and treasurer* (i.e. the remaining two directors of plaintiff corporation) "that they authorized the suit; that they retained counsel with full knowledge, consent and approval of the other holder of one-half of the capital stock." The court stated at page 134:

". . . the proof is overwhelming on this state of the record that the suit was not authorized by the *proper officer* or by the board of directors. While a vice-president may generally act in the event the office of president is vacant, the facts here indicate that the president was never duly removed from office

by the board of directors. *In these circumstances the moving defendant still remains the president, and the vice-president (alone or with the treasurer) cannot authorize the present action . . . in the absence of proof of being empowered to do so. The mere fact that the holder of fifty per cent of the stock consented to the action does not justify the suit in the name of the corporation, where (as here) the other fifty-per-cent stockholder objects to it. . . .*

*"It is no answer that the plaintiff corporation would be hamstrung in the proper protection of its interests, even though it be true that the president would never authorize suit against himself, that his fifty-per-cent representation on the board of directors would never approve such an action, and that his fifty-per-cent stock control would never ratify it. The action here is brought in the name of the corporation—and it is the corporation which must agree to sue in its own name.* When the corporation does not want to sue when it should, it may be sued. *The active projectors of the present action are not without remedy, since they may sue (if so advised) in a representative capacity as stockholders."* (Emphasis added.)

In *Voron & Chiat* v. *Benguiat,* 162 N.Y.S. 974, the action was against an outsider. Plaintiff's secretary and its treasurer constitute one-half of the board of directors, and are the holders of 50 per cent of the stock. They authorized the attorneys to commence the action. "The president of the corporation is a friend of the present defendant, . . . and it is plain that the president's interests are antagonistic to the interests of the secretary and treasurer." The court stated at page 975 that:

". . . It is impossible to hold that the bringing of this action was authorized by the corporation. As the secretary and the treasurer only own 50 per cent of the stock, and as they constituted but two of the four members of the board of directors, certainly neither the stockholders nor the board of directors have given proper authorization, *and if such authority is held to exist in the officers of a corporation, certainly the officer in whom it would be found would be the president as the chief executive officer,* and not the secretary or the treasurer." (Emphasis added.)

The California position with reference to the authority of corporate officers has been strict. Even the president, apart from acts done in the course of ordinary business, or in pursuance of apparent authority, depends upon the powers conferred upon him, either by statute, corporate charter, by-laws or the directors. ■ The mere fact that he is president,

without more, does not necessarily give him greater power than any other director. *Campbell* v. *Hanford*, 67 Cal.App. 155 [227 P. 234] ; *Pacific Bank* v. *Stone*, 121 Cal. 202 [53 P. 634].

In the case before us there is no claim that the Powells, or either of them, had previously conducted the affairs of the corporation without intervention, nor that they, or either of them, had ever assumed any management of the corporation to the knowledge of the Shirleys, or either of them. There was no emergency involved in the case in the sense that if the action was not filed and prosecuted as was attempted all would be lost forever for the corporation. As was said in *Kardweel, supra,* ''the active projectors of the present action are not without remedy, since they may sue (if so advised) in a representative capacity as stockholders.''

Some of the cases referred to herein have been reviewed in brief in 31 New York University Law Review 1433, 32 New York University Law Review, 697 and 1391, and 34 New York University Law Review 1432, where it is appropriately stated, ''The merry-go-round of the corporate president's power to institute legal action in the corporate name still spins; and dizzily !''; 35 New York University Law Review 623 and 26 Fordham Law Review 339.

Mr. and Mrs. Powell must have authority before they can institute an action in the name of the corporation. The authority necessarily has to be actual, apparent or implied. Clearly there was no actual or apparent authority. From what has been said in the cases, and from the law and the facts of this case, we think there was no implied authority in the Powells to bring the action.

We have no desire to be responsible for the opening of a Pandora's box in the field of corporate law in California.

For the reasons stated that part of the judgment which provides for the dismissal of the action is affirmed.

Wood, P. J., and Drapeau, J., pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 16, 1961.

---

*Assigned by Chairman of Judicial Council.